OPINION OF THE COURT

Per Curiam.

Defendant raises a substantial double jeopardy claim and seeks reversal of an order of the Appellate Division which affirmed his conviction, upon a second trial, of several counts of robbery, burglary, rape and sodomy arising from an inci *5 dent which occurred in Manhattan on April 25, 1975. Defendant was first put on trial for these crimes in July of 1975, together with one France Dugne, also accused of participating in the same criminal activities. During the course of that trial, the court sua sponte declared a mistrial as to defendant Michael, without obtaining his consent and in the absence of his counsel, because of certain circumstances discussed in detail below. Defendant now contends that the retrial which resulted in the convictions which he now seeks to have overturned was barred by application of the prohibitions against double jeopardy contained in our State and the Federal Constitutions (NY Const, art I, § 6; US Const, 5th Arndt). As we are persuaded that defendant’s arguments are correct, it is our unpleasant duty to reverse the order appealed from and order that the indictment charging defendant with these serious crimes of violence be dismissed solely because of the trial court’s abuse of its authority to declare a mistrial.
Before discussing the merits of defendant’s double jeopardy defense, we must first determine whether it presents a question of law reviewable by this court.[1] In criminal cases the Court of Appeals, unlike the Appellate Divisions, may only review questions of law, except in capital cases (compare CPL 470.35 with CPL 470.15 and CPL 470.30). CPL 470.05 (subd 2) provides that "[fjor purposes of appeal, a question of law with respect to a ruling or instruction of a criminal court during a trial or proceeding is presented when a protest thereto was registered, by the party claiming error, at the time of such ruling or instruction or at any subsequent time when the court had an opportunity of effectively changing the same. *6 * * * In addition, a party who without success has either expressly or impliedly sought or requested a particular ruling or instruction, is deemed to have thereby protested the court’s ultimate disposition of the matter or failure to rule or instruct accordingly sufficiently to raise a question of law with respect to such disposition or failure regardless of whether any actual protest thereto was registered”. Defendant Michael failed to raise any double jeopardy claim before or at trial, and instead sought to raise it for the first time on appeal. Hence, his claim does not present a question of law reviewable in this court unless it falls within the small group of claims so fundamentally basic that they constitute questions of law for purposes of our review despite the failure to raise them in a timely manner.
There exist certain narrowly drawn exceptions to the general rule that a timely objection or request is necessary to create a question of law reviewable by this court, for certain principles of law are deemed so fundamental to our criminal justice system that a claimed violation of those principles creates a question of law despite the failure to timely raise that claim in the courts below (see People v Patterson, 39 NY2d 288, 294-296, affd 432 US 197). The requirement that a claim must be timely raised in order to create a question of law is grounded in large part in the need to preserve limited judicial resources and avoid untoward delay in the resolution of criminal proceedings. Certainly, every defendant must be provided at least one opportunity to assert any defense or any claim that the proceedings against him are in some way tainted by a violation of the law. At the same time, the very real interest of the State in achieving finality in a criminal prosecution mandates that such objections be timely raised. Any other rule would serve as an invitation to delay and could result in an unmanageable morass of collateral proceedings within each prosecution. Hence, it is both proper and necessary for the State to require that all such objections be raised at a time when they can be dealt with most readily. At the same time, there exist certain rules of law, be they founded on the common law, prescribed by statute, or mandated by our Constitutions, which are so basic to the validity of a criminal proceeding that the failure to observe such a rule may be raised at any time during the appellate process.
Turning now to the exigencies of the instant appeal, we must first determine whether a claim that the constitutional *7 prohibitions against double jeopardy have been violated poses a question of law reviewable in this court despite the failure to raise that defense before the trial court. We conclude that it does, for double jeopardy implicates the very power of the State to prosecute a particular defendant for a particular crime and serves as an important check on the potential power of the State to intimidate its citizenry. The constitutional prohibition against double jeopardy is fundamental not only to the process of criminal justice, but to our system of government itself. It is, moreover, a doctrine with obvious jurisdictional overtones. That this is so at least in this State is strongly suggested by the fact that double jeopardy is a traditional ground for obtaining the extraordinary remedy of prohibition (e.g., Matter of Nolan v Court of Gen. Sessions of County of N. Y., 11 NY2d 114), which normally lies only where there is an attempt to act without or in excess of jurisdiction (see Matter of B. T. Prods. v Barr, 44 NY2d 226, 231; La Rocca v Lane, 37 NY2d 575; Note, Writ of Prohibition in New York — Attempt to Circumscribe an Elusive Concept, 50 St John’s L Rev 76). Although a double jeopardy objection may be waivable (see Menna v New York, 423 US 61, 63, n 2; People v La Ruffa, 37 NY2d 58, cert den 423 US 917) in certain unusual cases, as where a defendant explicitly consents to retrial despite a double jeopardy defense, double jeopardy nonetheless has strong ties to the concept of jurisdiction, and that, taken together with the significance of the prohibition as a bulwark against governmental overbearing, compels us to hold that a double jeopardy defense based on the State and Federal Constitutions poses a question of law reviewable in this court despite the failure to raise it at the trial level.[2] This conclusion is supported by an examination of the double jeopardy defense in light of the rationale supporting the general rule requiring that an issue be timely raised: *8 namely, the avoidance of unduly prolonged proceedings and the possibility of repeated trials. The State’s legitimate interests are not seriously touched by allowing a constitutional double jeopardy claim to be raised for the first time on appeal, since such a claim, even if successful, will not result in repeated proceedings, as it is the very essence of a successful double jeopardy defense that there are no further proceedings. Similarly, there will be no need for any additional factual findings in such cases, as such a defense is made out from the record of the prior proceedings and entails no factual inquiry. Finally, double jeopardy does not constitute the type of error which can be remedied so as to allow the trial to proceed in accordance with law if it is timely raised, for such a defense, if valid, is simply not correctable.
Having determined that defendant’s constitutional double jeopardy claim does present a question of law reviewable by this court, we next turn to the merits of that defense. The factual basis for defendant’s argument is both simple and sad. One morning several days after the commencement of defendant’s first trial, the court received a phone call from the office of defendant’s attorney, notifying the court that the attorney’s father had died unexpectedly during the night and the attorney would be unable to appear in court that day. When the case was called, the court informed the prosecutor and counsel for the codefendant of this problem, and asked their advice. The prosecutor suggested that the case be adjourned until defendant’s counsel could return. The court stated that it would instead probably declare a mistrial since it was impossible to continue the trial in the absence of defense counsel, and an adjournment was not feasible because the trial had to terminate by the end of the week since the court and several members of the jury had made vacation plans for the following week. It was then Tuesday, and the court was of the opinion that even a single day’s delay would make it impossible to complete the trial by that Friday. Accordingly, it believed a mistrial to be necessary at least as to this defendant. The court apparently also considered declaring. a mistrial as to the codefendant as well, because it was possible that even though the trial could continue apace against him it too might not be completed by Friday. Eventually, however, the court decided to continue the trial as to codefendant in the hope that it would indeed end by Friday, but to declare a mistrial as to defendant Michael. During this *9 discussion, in which the defendant had no part, both the prosecutor and counsel for the codefendant suggested to the court that to declare a mistrial might create a double jeopardy problem. The court’s initial reaction to this possibility was to tell the prosecutor that that was the People’s problem, not the court’s, and to criticize the prosecutor for not having accepted defendant’s offer to plead guilty to a lesser charge instead of "wasting” the court’s time with a trial. Subsequently, the court indicated that it believed there would be no double jeopardy problem because it was impossible to continue with the trial.
Defendant was ultimately retried and convicted. The Appellate Division affirmed his conviction, without opinion, and leave to appeal was granted by an Associate Judge of this court. While defendant raises several claims of error, we deem it necessary to consider only his double jeopardy argument for our recognition of the validity of that defense mandates a dismissal of the charges against defendant. Accordingly, we do not reach his other arguments.
Where a court declares a mistrial without obtaining the defendant’s consent the double jeopardy provisions of both our State Constitution and the Federal Constitution prohibit retrial for the same crime unless "there is a manifest necessity for [the mistrial], or the ends of public justice would otherwise be defeated” (United States v Perez, 9 Wheat [22 US] 579, 580; accord Matter of Nolan v Court of Gen. Sessions of County of N. Y., 11 NY2d 114, 119, supra). These principles have to some extent been codified in CPL 280.10 (subd 3), which allows a court to declare a mistrial on its own motion only "when it is physically impossible to proceed with the trial in conformity with law”. Since the Trial Judge is in the best position to determine whether a mistrial is in fact necessary in a particular case, that court is entrusted with discretion in this area, and deference is to be accorded the Trial Judge’s decision to declare a mistrial (Matter of Napoli v Supreme Ct. of State of N. Y., 33 NY2d 980, affg on opn below 40 AD2d 159; Arizona v Washington, 434 US 497, 513-514; Gori v United States, 367 US 364).
Nonetheless, a mistrial founded solely upon the convenience of the court and the jury is certainly not manifestly necessary. While the court could not have continued defendant’s trial in the absence of defense counsel, a delay of several days would certainly appear to have been reasonable, *10 despite any inconveniences it might have imposed upon the court and some jurors. Rather than considering this alternative seriously, the court sua sponte and unfortunately declared a mistrial. That decision constituted an abuse of discretion. A defendant’s right to have his fate determined as expeditiously as possible and by the first jury to which the case is presented is a basic one, and may not be set aside without strong reason. While it is unfortunate that the travel plans of the court and several jurors might have been disrupted, such inconvenience is a necessary part of our criminal justice system. One who accepts the responsibility of the robe must be prepared at times to put aside his or her own desires and plans in response to the call of public duty. Weighed in the balance of judicial obligations, a necessary change in travel plans is of little significance.
Similarly, a citizen called to jury duty will often be required to make some personal sacrifices, financial or otherwise. This usually seems unjust to those so called upon, and in fact it sometimes is unjust, but it is necessary as long as we are to persist in our cherished belief that an accused felon is entitled to be tried by a jury of his peers. This does not mean that juror discontent will never justify a mistrial. Indeed, if a jury becomes biased against a defendant as a result of the length of the trial or for some other reason, and is unable to fairly consider that defendant’s guilt or innocence, the court is then required to declare a mistrial. Such cases, however, are rare, for a distinction must be drawn between the ordinary pique of a juror at being forced to postpone his or her normal pursuits, and that inability to fairly view the evidence which mandates a mistrial. Most jurors will remain faithful to their oath and put aside their personal grievances in the attempt to reach a fair verdict. Were this not so, the jury system would be a mockery, for there are few jurors who would not prefer to be elsewhere.
The decision whether a mistrial is necessary because of juror bias if often based on subtle indications of discontent, not always apparent on the cold face of the record presented to an appellate court. Hence, as is noted above, a Trial Judge is entrusted with considerable discretion in making such determinations, for it is the Trial Judge, better than any other, who can detect the ambience of partiality. In such cases, moreover, it is often better to err on the side of caution, for retrial is a lesser evil than conviction by a biased jury. The *11 court’s discretion in making such decisions, however, is not unlimited. Where, as here, the decision to declare a mistrial is based solely on the fact that a delay in trial would inconvenience the court and the jury, and without any inquiry into the effect of such a delay on the jury’s ability to render a fair verdict, discretion falters and abuse appears.
In short, our examination of the trial record persuades us that it was not at all necessary to declare a mistrial at the time that decision was made, although it is not inconceivable that a mistrial might have eventually become a necessity had defense counsel’s absence continued unduly. Hence, the retrial of this defendant for the same crimes was prohibited by the Constitutions of both New York and the United States, and these constitutional prohibitions against double jeopardy mandate reversal of defendant’s conviction and dismissal of the indictment.
Accordingly, the order appealed from should be reversed and, perforce, the indictment should be dismissed.

. It has been suggested that by failing to raise his double jeopardy claim at the trial level defendant waived that defense. While the question of waiver as a practical matter is often inextricably intertwined with the determination whether a defendant has preserved a question of law reviewable by this court, the two inquiries are conceptually distinct (see People v Iannone, 45 NY2d 589, 600). Whether a question of law reviewable in this court exists in a particular case is peculiarly a matter of State law, involving as it does limitations upon the powers of this court. While the same could well be said of the issue of waiver of any claim founded solely upon the New York State Constitution, questions concerning waiver of a right guaranteed under the Federal Constitution are essentially matters of Federal law. The Supreme Court of the United States has quite clearly held that a guilty plea, which constitutes a waiver of many other rights and privileges, may not serve as a waiver of a double jeopardy claim (Menna v New York, 423 US 61). Since the failure to raise a particular defense is a much more equivocal indication of intent than is the decision to plead guilty, it would appear to follow that the failure to timely raise a double jeopardy claim cannot alone serve as a waiver of that claim.

. We note that this conclusion does not conflict with our holding in People v La Ruffa (37 NY2d 58, cert den 423 US 917). In that case we were concerned solely with the question whether a guilty plea could constitute a waiver of a double jeopardy claim. Our holding in that case was not based on the purported absence of a question of law, as is now suggested by the dissent. Indeed, implicit in our holding in La Ruffa is the suggestion that a question of law is presented by a constitutional double jeopardy claim even if that claim was not timely raised, for we could not have reached the question of waiver had the case not presented a question of law. In short, had La Ruffa’s double jeopardy claim not constituted a question of law reviewable in this court, the discussion of waiver in that decision would have been irrelevant to the disposition of that appeal.