OPINION OF THE COURT
Chief Judge Cooke.
The issue here is whether double jeopardy bars retrial of a criminal defendant where, due to the unexpected hospitalization of a prosecution witness, a mistrial had been declared over defense objection. A unanimous Appellate Division held that the retrial was permissible. For reasons which follow, there should be an affirmance.
Petitioner, Raymond Hall, was indicted by a Kings County Grand Jury for criminal sale of a controlled substance to an undercover police officer. Trial commenced on April 23, 1979 in Kings County Supreme Court. Five days earlier, the prosecutor had been advised by the officer that he would be available to testify on Wednesday, April 25, and the two agreed to meet on Tuesday, April 24, to discuss the case. At the April 24 court session, a jury was selected and opening statements were made. Upon returning to his office that evening, the prosecutor learned, for the first time, that the officer had suffered a cut finger while effecting an arrest during the weekend. The prosecutor then phoned the witness, who related that his hand had become severely infected and he was to visit his physician on Wednesday, the next day.
The court and defense counsel were alerted to the problem by the prosecutor on Wednesday morning. Expressing the *504 hope that the officer would be available to testify on Thursday, the trial assistant began to present his case. During the latter part of Wednesday afternoon, however, the prosecution was informed that the infection was not responding to treatment, resulting in hospitalization of the undercover officer. At the opening of court on Thursday, the prosecutor announced that, according to his information, the witness had been hospitalized for a minimum of one week and, if complications developed, an additional two-week hospital stay might be required. Therefore, the prosecutor applied for a continuance. Defense counsel immediately requested and was granted a hearing to determine the extent of the illness.
At the hearing, the treating physician testified that since the infection had not responded to oral antibiotics, the witness had been hospitalized for intravenous administration of antibi-[1] otics. The doctor stated that it was too early to gauge the effectiveness of the treatment, but even if it was successful the officer would remain in the hospital until at least Tuesday, May 1. The doctor testified that it would be detrimental to the witness’ health to require attendance in court in his present condition, and that a recuperation period would be required following hospitalization. When pressed for greater specificity as to availability, the doctor indicated that even if treatment went well the officer would not be able to testify prior to the week of May 7, and stressed the impossibility of exact prediction.
On the morning of Friday, April 27, the court denied a continuance and directed the prosecutor to proceed. Then, on Monday morning, the trial assistant informed the court that he had spoken to the doctor, and that the officer was to be discharged from the hospital on May 2. The doctor had stated that the witness would not be available to testify until May 10 or May 11 at the earliest, but cautioned that this estimate was dependent upon the officer’s response to therapy. Acting on this information, the prosecutor applied for a continuance until May 14, which the court initially granted. Later, the decision was rescinded to allow defense counsel time to research and consider the issue.
Defense counsel appeared on Tuesday and opposed continuance, arguing that because of its effect on the jury, a lengthy adjournment would impair defendant’s right to a fair trial. Counsel also urged that the unverified and unsworn report from the prosecutor as to the witness’ medical condition was *505 insufficient to justify a delay and requested a new medical hearing. In view of defendant’s position, the court denied the motion for a continuance, but, over defense objections, declared a mistrial, sua sponte. Defendant then commenced this article 78 proceeding, in the nature of prohibition seeking to restrain his impending retrial.[1] The Appellate Division unanimously dismissed the petition on the ground that declaration of a mistrial was manifestly necessary and that retrial would therefore not violate double jeopardy.
The double jeopardy clauses of our State and Federal Constitutions have traditionally been read to limit the instances in which a mistrial can be declared without a criminal defendant’s consent (e.g., Arizona v Washington, 434 US 497, 505; United States v Perez, 9 Wheat [22 US] 579, 580; Matter of Nolan v Court of Gen. Sessions of County of N. Y., 11 NY2d 114, 119). This is so because, under our constitutional scheme, a defendant possesses a "' "valued right to have his trial completed by a particular tribunal” ’ ” (Illinois v Somerville, 410 US 458, 466; Wade v Hunter, 336 US 684, 689). Weighed against this right, of course, is "the public’s interest in fair trials designed to end in just judgments” (Wade v Hunter, supra, at p 689). In accommodating the uneasy tension between these conflicting considerations, courts have settled upon a formula for determining when a mistrial may be declared over defense objections. According to classic formulation, retrial is not barred where there was "a manifest necessity for [a mistrial], or the ends of public justice would otherwise be defeated” (United States v Perez, supra, at p 580).
Of necessity, the decision whether to abort a criminal trial must rest, in the first instance, in the sound discretion of the trial court (e.g., People v Michael, 48 NY2d 1, 9, supra; Matter of Napoli v Supreme Ct. of State of N. Y., 33 NY2d 980, affg on opn below 40 AD2d 159). And, when the Trial Judge has properly explored the appropriate alternatives, and there is a sufficient basis in the record for a mistrial, an appellate court will be hesitant to interfere with the exercise of this discretion (e.g., Matter of Napoli v Supreme Ct. of State of N. Y., supra). *506 Especially is this so when the mistrial involves an assessment of the impact of certain events upon a jury, such as a deadlock or the uttering of prejudicial comments (Arizona v Washington, 434 US, at pp 509-510, supra). On the other hand, where the mistrial is premised upon a claimed unavailability of crucial prosecution evidence, the validity of that claim is subjected to "the strictest scrutiny” (Arizona v Washington, supra, at p 508; compare Downum v United States, 372 US 734, with Wade v Hunter, 336 US 684, supra), since a prosecutor is not entitled to a mistrial merely to gain " 'a more favorable opportunity to convict’ ” (Arizona v Washington, supra, at pp 508-509, n 25, quoting Downum v United States, supra, at p 736).
Here, the unavailability of a critical witness resulted from an unforeseeable contingency not within the control of the People. When the trial began, the prosecutor believed that his witness would be available to testify as scheduled. Indeed, the prosecutor had no knowledge of the injury until after a jury had been impaneled and opening statements completed. He quickly alerted the court and defense counsel of the possible problem, even though it then seemed that the officer’s testimony would not be delayed. When the prosecutor learned of the severity of the officer’s condition, he again promptly conveyed this information to the court and opposing counsel, and co-operated in attempting to resolve the difficulty. Finally, the debilitating nature of the medical problem was independently verified by the testimony of the attending physician. In these circumstances, it is impossible to conclude that the unavailability of the crucial evidence was due to the misconduct of the prosecutor, or that the prosecutor had any reason to anticipate the witness’ hospitalization prior to the commencement of trial (see Arizona v Washington, supra, at p 508, n 24).
The only remaining question, then, is whether the trial court abused its discretion in declaring a mistrial. It is obvious that the court was confronted with a difficult situation. The trial simply could not proceed as scheduled, and it was uncertain when the witness would be physically able to testify. One possible alternative would be a continuance, which the Judge considered and was willing to grant. But defense counsel strenuously urged that a lengthy continuance would jeopardize the rights of her client. Solicitous of the defendant’s rights, the Trial Judge decided that a continuance was not a viable *507 option.[2] At that point, the only realistic alternative was termination of trial. Indeed, neither at the time of the mistrial nor on this appeal has counsel identified other appropriate courses of action, other than a new hearing on the officer’s medical condition or a short continuance and a reassessment of the officer’s progress. Either of these suggestions would have been appropriate only if there were some basis for doubting the seriousness of the witness’ disability. However, the doctor’s testimony at the medical hearing and the doctor’s progress report, communicated to the court through the Assistant District Attorney, stood unimpeached and unrefuted.
Nor was the court obliged to hale the doctor into court merely to repeat information relayed via the prosecutor. Although the information was technically hearsay, a trial court considering the exigencies of a potential mistrial situation cannot be bound by the strict rules of evidence applicable at formal proceedings (cf. Healy v Rennert, 9 NY2d 202, 209). In such a situation a court must be free to act upon the information at hand, so long as it is reliable. Thus, since the trial court adequately explored the available alternatives and based its decision upon valid considerations, we cannot conclude there was an abuse of discretion.
For these reasons, the judgment of the Appellate Division should be affirmed, with costs.
Judges Jasen, Gabrielli, Jones, Wachtler, Fuchsberg and Meyer concur.
Judgment affirmed.

. The extraordinary remedy of prohibition has traditionally been available to bar a retrial which would violate double jeopardy (e.g., People v Michael, 48 NY2d 1, 7; Matter of Nolan v Court of Gen. Sessions of County of N. Y., 11 NY2d 114, supra). Thus, it is proper to assess the merits of petitioner’s double jeopardy claim in this proceeding.

. Of course, the court could have overruled defendant’s objections and granted a continuance, in which case defendant could have raised his objections on appeal if a judgment of conviction ensued. This was not the path taken and accordingly we intimate no opinion on the propriety of the length of continuance requested by the prosecution.