In the Matter of ROBERTO RESPETO, by His Attorney, MATTHEW J. KILLION, Petitioner, v DUNCAN McNAB, as Justice of the Supreme Court, et al., Respondents.

First Department, December 14, 1982

APPEARANCES OF COUNSEL

*Matthew J. Killion* of counsel (*Caesar Cirigliano,* attorney), for petitioner.

*Esther Furman* of counsel (*Mario Merola, District Attorney,* attorney *pro se*), for respondent.

OPINION OF THE COURT

MILONAS, J.

The petitioner herein, Roberto Respeto, was arrested on October 3, 1981 in connection with the knifepoint robbery of Eitan Haber on August 27, 1981 and the gunpoint robbery of Wendy Rodriguez on September 21, 1981. He appeared before the Grand Jury investigating those incidents and claimed to have had a problem with Wendy Rodriguez and her stepfather Juan Quiara, also known as Louis Rodriguez, due to a large sum of money owed to him by Quiara as the result of a numbers "hit" placed in Wendy Rodriguez' laundromat. The petitioner also stated that Eitan Haber was the owner of the building. An indictment incorporating both robberies was returned, and a jury trial thereunder commenced on July 23, 1982.

The first prosecution witness was Eitan Haber, who completed his testimony on Monday, July 26. The following morning, Juan Quiara took the stand. Shortly after the conclusion of his cross-examination, but outside the presence of the jury, Quiara suffered a heart attack and died. That afternoon, the Assistant District Attorney requested an adjournment on the ground that his next witness, Wendy Rodriguez, was unable to proceed because of the sudden death of her stepfather. The defense agreed, and the case was put over until the next day. The next morning, which was July 28, the District Attorney asserted that Wendy Rodriguez was in no shape to testify and, moreover, she had to care for her mother who was under sedation and suffering from a heart condition. He thereupon asked for an adjournment until Monday, August 2, 1982. Once more, the defense counsel consented. The court then advised the jury that there was some difficulty concerning a witness. Upon inquiry, the court found that seven jurors were in the second week of their service. However, only one juror expressed any hesitation about returning.

On Monday, August 2, all 13 jurors were in attendance. Out of the jury's hearing, the District Attorney informed the court that Wendy Rodriguez was still too upset to testify and applied for a mistrial. After the defense objected, the prosecutor suggested a possible alternative — that the matter be adjourned from Monday to Monday until the witness became available. However, the court concluded that "it would be impractical to continue this from week to week awaiting the availability of the daughter of the deceased to testify." According to the court, since the delay was unforeseen and not caused by the People's action, "there was a manifestness to declare a mistrial". The petitioner subsequently instituted this proceeding pursuant to CPLR article 78, contending that retrial of the robbery charges would constitute a violation of his State and Federal constitutional right not to be placed in double jeopardy.

An article 78 proceeding is an appropriate means of raising the issue of double jeopardy (*Matter of Abraham v Justices of N. Y. Supreme Ct. of Bronx County,* 37 NY2d 560; see, also, *Matter of Wiley v Altman,* 52 NY2d 410).

Clearly, a State may not put a defendant in jeopardy twice for the same offense (*Arizona v Washington,* 434 US 497; *Benton v Maryland,* 395 US 784). However, unlike the situation in which a trial has terminated in an acquittal or conviction, a retrial is not automatically prohibited where there has been no final resolution of the merits of the charges. In such an instance, "in view of the importance of the right [against double jeopardy], and the fact that it is frustrated by any mistrial, the prosecutor must shoulder the burden of justifying the mistrial" (*Arizona v Washington,* 434 US, at p 505 [brackets added]).

The decision to abort a particular trial is generally within the discretion of the trial court, which is in the best position to determine the necessity for a mistrial. (*Hall v Potoker,* 49 NY2d 501; *People v Michael,* 48 NY2d 1; *Arizona v Washington, supra.*) Thus, where "the Trial Judge has properly explored the appropriate alternatives, and there is a sufficient basis in the record for a mistrial, an appellate court will be hesitant to interfere with the exercise of this discretion" (*Hall v Potoker,* 49 NY2d, at p 505).

When the basis for the mistrial is the alleged unavailability of crucial prosecution evidence, as is the case before this court, the validity of that claim must be subjected to the "strictest scrutiny". (*Arizona v Washington,* 434 US, at p 508; *Hall v Potoker,* 49 NY2d, at p 506.) In the instant case, the trial court failed to make any attempt whatever to investigate either the circumstances surrounding Wendy Rodriguez' purported incapacity to take the stand or how long her supposedly distraught mental state would continue to preclude her from testifying. This is in contrast to what occurred in *Hall v Potoker (supra)* where the court, upon the defense attorney's request, conducted a hearing to ascertain the extent of a prosecution witness' illness following that individual's unexpected hospitalization. Consequently, a record was developed in which "the debilitating nature of the medical problem was independently verified by the testimony of the attending physician." (*Hall v Potoker,* 49 NY2d, at p 506.) In addition, the defense counsel had vehemently objected to a lengthy continuance, arguing that such a delay would jeopardize the rights of

her client. Implicit in the court's decision is the proposition that, wherever possible, the court should explore other options to a mistrial and that aborting the trial should be utilized only as a last resort.

Since there was no claim that Wendy Rodriguez was suffering from any disease or illness rendering her physically unable to testify, it was particularly incumbent upon the court to inquire into her future availability. In that respect, it was the District Attorney's burden to demonstrate that the death of a witness' relative was a sufficient excuse to warrant a mistrial. The court also never looked into such alternatives as a continuance or a severance of the two robberies. According to the Court of Appeals in *People v Michael* (48 NY2d, at p 9) "a mistrial founded solely upon the convenience of the court and the jury is certainly not manifestly necessary." In that case, one morning several days after the trial had commenced, the court received a telephone call from the office of the defense attorney notifying it that the lawyer would not be present that day due to his father's sudden death the preceding night. Instead of adjourning the matter until defendant's counsel could return, as suggested by the prosecutor, the court declared a mistrial (although continuing the trial against the codefendant). The ostensible reason for this was that in order to accommodate the vacation plans of the court and several of the jurors, the trial had to be completed by the end of the week. The Court of Appeals held that the trial court's action constituted an abuse of discretion.

In the situation at issue here, only one member of the jury indicated any difficulty about returning the following week and that juror merely stated that her employer might need her because of a staff shortage. Thus, even if the jury's inconvenience could properly be regarded as a significant factor in determining whether to terminate a trial (which, in view of *People v Michael* [*supra*], is doubtful), the record does not support a finding that there would have been any disruption to the jurors.

Moreover, the death of Juan Quiara creates a further problem. Since he was also a witness in the case, a retrial would necessitate having to rely solely on the transcript of

his testimony. The perpetuation of Juan Quiara's testimony can hardly be considered equivalent to his actual appearance on the stand. The second jury would not have the opportunity of studying the demeanor of this important prosecution witness whose experience during cross-examination, as shown by the trial transcript, was apparently quite stressful.

Although it is conceivable that it might have become appropriate to abort the trial in the future, the record in this case does not reveal the manifest necessity which would justify the mistrial at the time that it was declared. Therefore, retrial of the petitioner is barred by the State and Federal Constitutions.

Accordingly, the application pursuant to CPLR article 78 in the nature of a writ of prohibition seeking to bar further prosecution of the petitioner under Indictment No. 0074/82 should be granted, without costs and without disbursements.

BLOOM, J. (dissenting in part). Defendant was indicted on two counts of robbery in the first degree which robberies were allegedly committed against separate complainants. The first, a knifepoint robbery, involved Eitan Haber and took place on August 27, 1981; the second, a robbery at gunpoint, involved Wendy Rodriguez and occurred on September 27, 1981. The counts were joined on the theory that, although based upon different criminal transactions, they were of such a nature that proof of one would be material and admissible as evidence in chief upon the trial of the other (CPL 200.20, subd 2, par [b]; *People v Munger*, 24 NY2d 445).

The trial commenced in July, 1982. The second witness was Juan Quiara, the stepfather of Wendy Rodriguez. In the main his testimony dealt with the identification of defendant, although he had not been present at either robbery. Apparently, defendant had borrowed some money from Quiara and had pledged his driver's license with him to secure repayment. The identification was made through a photograph contained on the license.

Following his testimony Quiara went from the courtroom to the District Attorney's office. There he suffered a heart attack and died.

The next witness who was to be called by the prosecutor was Ms. Rodriguez. Because of her grief and shock resulting from the death of her stepfather, the prosecutor notified the court that she was unable to proceed. He was granted a continuance to the following morning, the defendant's counsel consenting thereto. The next morning the prosecutor notified the court that Ms. Rodriguez was in attendance upon her mother, Quiara's wife, who had a heart condition and had been sedated. At his request, and again with the consent of defendant's attorney, the matter was set over to the following Monday. At the opening of court on Monday, the prosecutor notified the court that Ms. Rodriguez was still unable to attend and that he could not predict with any reasonable certainty when she would be able to do so. He then suggested that inasmuch as a number of jurors were in their third week of service, a declaration of a mistrial would be appropriate. When both defense counsel and defendant voiced their objection to a mistrial the prosecutor suggested, by way of alternative, that the case be adjourned from week to week until such time as Ms. Rodriguez was able to attend. However, the court thought the alternative suggestions impractical and declared a mistrial.

Insofar as concerns the count charging defendant with the robbery of Haber we agree with our brethren in the majority that the granting of the mistrial was error. There is no question but that substantial prejudice resulted to defendant from the declaration of a mistrial. Quiara, whose cross-examination had been energetic and exacting was no longer available to testify at the retrial. All that would be available to the jury would be a reading of his testimony at the prior trial — a most unsatisfactory substitute. Moreover, there was no need for the declaration of the mistrial, for a ready remedy was available to the court. It could have severed the count charging defendant with the robbery of Haber and proceeded to a conclusion on that count. Thus, there was no manifest necessity for declaring a mistrial on that count (cf. *People v Michael,* 48 NY2d 1).

However, the count charging defendant with the robbery of Ms. Rodriguez presents a somewhat different situation. On that count the complainant became unavailable be-

cause of the totally unanticipated death of her stepfather and the resultant illness of her mother. There was no indication when she might again be available to testify. Her testimony was required if the trial on that count was to go on to a conclusion. Moreover, while jeopardy had attached once the jury was selected and sworn upon the basis of a valid indictment (*Illinois v Somerville,* 410 US 458), the trial court was not divested of the power to declare a mistrial for a proper reason. Since it was in the best position to determine whether it was feasible to carry the case from week to week or to declare a mistrial, we are required to give due deference to the exercise of discretion by it (*People v Michael,* 48 NY2d 1, 9, *supra*). In the circumstances of this case we cannot say that there was no manifest necessity for the declaration of a mistrial on the count charging defendant with robbery of Ms. Rodriguez (*Hall v Potoker,* 49 NY2d 501).

Accordingly, we would grant the writ only to the extent of prohibiting retrial on the count charging defendant with robbery in the first degree of Eitan Haber on August 27, 1981 and would deny the application and dismiss the petition in all other respects.

SANDLER, J. P., and FEIN, J., concur with MILONAS, J.; MARKEWICH and BLOOM, JJ., dissent in part in an opinion by BLOOM, J.

Application for a writ of prohibition, granted, without costs and without disbursements.