(April 3, 1986)

■ THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v ARNOLD CATTEN, Appellant.—Judgment of the Supreme Court, Bronx County (John J. Reilly, J.), rendered on December 21, 1982, convicting defendant, following a jury trial, of criminal sale of a controlled substance in the third degree and criminal possession of a controlled substance in the third degree and sentencing him, as a second felony offender, to concurrent indeterminate terms of imprisonment of from 6 to 12 years, is reversed, on the law, the conviction vacated and the indictment dismissed.

During the first trial held in connection with the instant matter, which followed a *Wade* hearing, the undercover officer identified defendant as the seller of a controlled substance and testified regarding a precinct confrontational identification at which defendant was clad only in his underwear. Thereafter, Sergeant Edward Barrett of the backup team took the stand, acknowledging that prior to the aforementioned viewing, the undercover officer had seen defendant fully clothed but that defendant's clothing was subsequently removed to approximate his state of undress at the time of arrest. At this disclosure, defense counsel moved for a mistrial on the ground

that the prosecutor had withheld exculpatory evidence—that is, that the undercover officer was initially unable to identify defendant and required a second viewing of him in his underwear in order to make the identification.

There then ensued a discussion of the mistrial motion out of the jury's hearing at which the court criticized the Assistant District Attorney for failing to reveal that the undercover officer had not testified truthfully. Although the prosecutor stated that he had himself only just learned of the previous viewing and that, at any rate, Sergeant Barrett's testimony was simply inconsistent with that of the undercover officer and did not constitute exculpatory evidence, the court indicated that it would grant the mistrial. However, prior to the discharge of the jury, defendant's attorney had a consultation with his client. Advising the court that defendant did not want a mistrial and that he, counsel, had acted hastily and without first conferring with defendant, defendant's lawyer withdrew his motion for a mistrial. The court refused to permit counsel to withdraw his motion and proceeded to excuse the jury.

While it is true that the decision to abort a trial is generally within the discretion of the trial court (Hall v Potoker, 49 NY2d 501; People v Michael, 48 NY2d 1; Matter of Respeto v McNab, 90 AD2d 308, affd 60 NY2d 739), the law is clear that the doctrine of double jeopardy bars a retrial where a mistrial has been declared in the absence of defendant's consent unless a showing has been made that there is a " 'manifest necessity' " for the mistrial or the ends of public justice will otherwise be served. (Hall v Potoker, supra, p 505; People v Michael, supra; Matter of Respeto v McNab, supra.)

In the instant situation, the court directed a mistrial without first determining that there was a "manifest necessity" for such a course and without properly ascertaining whether there were appropriate alternatives, such as providing curative instructions to the jury. The fact that the court may have summarily dismissed the possibility of "purging" from the jury's mind the undercover officer's inability to identify defendant until he observed defendant a second time in his underwear is not equivalent to the Judge's exploring whether such curative instructions could be devised or consulting with respective counsel on the matter. Instead, the court simply concluded arbitrarily that nothing could be done to remedy the situation short of declaring a mistrial. The court, having resolved upon this course, then declined to consider defendant's expressed wishes to the contrary. In that connection,

the dissent appears to take the position that once a defendant moves for a mistrial, he may not change, without the court's agreement, his mind and insist on proceeding with the trial.

While the ultimate determination as to whether to declare a mistrial is generally within the discretion of the court, that does not mean, nor do the cases cited by the dissent hold *(see, Hall v Potoker, supra; People v Michael, supra; Matter of Respeto v McNab, supra)*, that a motion for a mistrial may not be withdrawn so long as the jury has not yet been discharged. Indeed, the court's statement that it was favorably disposed to granting defendant's initial motion did not constitute a ruling, merely an expression of opinion. No ruling took place until the mistrial was actually declared and the jury discharged. Prior to that time there was no bar to defendant's withdrawing his motion. Moreover, even assuming that defendant was prejudiced by the People's withholding of exculpatory information, absent a finding of "manifest necessity", the court improperly interfered in something which can simply be deemed trial strategy, a matter the Trial Judge should refrain from second-guessing. Since the court was not warranted in declaring a mistrial over the expressed desire of defendant to go ahead with the trial, retrial of the defendant was prohibited. Concur—Carro, Milonas and Rosenberger, JJ.

Murphy, P. J., and Ellerin, J., dissent in a memorandum by Murphy, P. J., as follows: If the record in this case disclosed that the trial court acted on its own initiative in declaring the subject mistrial, I would have no difficulty joining the majority. As the majority points out, a mistrial declared at the volition of the court alone must be predicated upon the manifest need to end the proceeding prematurely *(Hall v Potoker, 49 NY2d 501; People v Michael, 48 NY2d 1; Matter of Respeto v McNab, 90 AD2d 308)*. Clearly, it was not manifestly necessary, or in the words of the statute, "physically impossible" (CPL 280.10 [3]), to continue with defendant's first trial. Thus, had the court declared a mistrial solely upon the ground of manifest necessity I would have no alternative but to agree that the retrial of defendant violated the constitutional prohibition against double jeopardy.

The trial court, however, did not act on its own initiative. Counsel for the defendant moved for a mistrial based on conduct by the prosecution which the defense understandably regarded as seriously prejudicial to its case. After extensive argument, the court concluded that the prosecution had not timely informed it of evidence gravely impugning the reliability of the undercover officer's identification of defendant. The

undercover officer's testimony in this respect was crucial because he was the only prosecution witness linking defendant directly to the sale of controlled substances. Contrary to the majority opinion's final observation, the court did consider the possibility of giving curative instructions as to the undercover officer's testimony but concluded: "There is no way in the world, that I can purge this jury, of the fact that the identification of the defendant, on February the 2nd, depended on the fact that he was dressed the same way as he was in the apartment, at the same time he [the undercover agent] saw him." Finding, therefore, that the defect in the proceeding prejudiced defendant and deprived him of a fair trial, the court properly granted defendant's motion and declared a mistrial.

It is undisputed that the court's action to this point was entirely appropriate. Plainly, the court followed the command of CPL 280.10 (1) mandating the declaration of a mistrial and the ordering of a new trial "[u]pon motion of the defendant, when there occurs during the trial an error or legal defect in the proceedings, or conduct inside or outside the courtroom, which is prejudicial to the defendant and deprives him of a fair trial." Rather, the difficulty arises from the defense counsel's request to withdraw his mistrial motion after the motion was decided in accordance with his previously expressed wishes. Defendant's counsel explained that he had not conferred with his client before making the motion and consequently was not aware that defendant wanted to continue with the trial. In rejecting this ground for withdrawal the court observed that defendant had been present during the motion and made no objection and that defendant and his counsel conferred in the presence of the court concerning the consequences of the motion.

The majority apparently takes the position that defense counsel's belated request to withdraw his already decided mistrial motion automatically erases the fact that the motion was made and transforms the mistrial into one declared by the court on its own motion supportable only upon a showing of manifest necessity.

A motion for a mistrial may not be lightly made. When a defendant moves for a mistrial and, as here, there has been no intentional prosecutorial misconduct warranting the invocation of the double jeopardy bar to further prosecution on the indictment *(see, Oregon v Kennedy,* 456 US 667), retrial will follow if the motion is granted (CPL 280.10). The motion is made not to avoid prosecution but for the opportunity to be

fairly judged in a forum unaffected by prejudicial defect. It is made in light of the considered judgement that the interests of the defense are best served by starting afresh rather than continuing in an irreparably tainted proceeding. A court called upon to decide a defendant's motion for a mistrial has every reason to expect that the motion is seriously undertaken. Manifestly, a court should not during the course of a trial be required to undertake an extensive inquiry to determine whether motions purportedly made on defendant's behalf are in fact in conformity with defendant's wishes. It must be presumed that defense counsel will, during the course of a rapidly unfolding criminal proceeding, exercise his or her professional judgment in a manner consonant with the defendant's legal interests.

Once the defendant's mistrial motion was before the court its determination lay largely within the court's discretion. *(Hall v Potoker, supra; People v Michael, supra; Matter of Respeto v McNab, supra.)* That exercise of discretion having been accomplished, it was not retrospectively invalidated by the untimely and highly suspect revelation that the defense counsel acted without his client's consent. The determination of the court stands unless in the further exercise of its discretion the court decides to alter its previous ruling. This, in any case, was the holding of this court in *Matter of Napoli v Supreme Ct.* (40 AD2d 159, *affd* 33 NY2d 980, *cert denied* 417 US 947). The facts in *Napoli* were substantially the same as those obtaining here. The defendant requested a mistrial on the ground that the prosecution improperly withheld exculpatory evidence. After the court granted the mistrial the defense counsel indicated that he had changed his mind and wanted to continue with the proceeding. Despite counsel's newfound desire to proceed the court adhered to its initial determination. In denying defendant's double jeopardy claim the late Justice Steuer wrote for the majority: "It was not only the province of the court, but his duty, to rule on the application [for a mistrial]. After the ruling it was discretionary with him whether to allow a withdrawal." *(Supra,* at p 161.) Although I dissented in *Napoli* I did so on the ground that in my view the mistrial motion had been withdrawn before its determination. By contrast, there can be no question that the motion in the present case was squarely before the court and that there was no attempt to withdraw it until after the court's ruling. At that point *Napoli* dictates that the court has discretion as to whether a withdrawal is to be permitted. I see no basis to distinguish *Napoli* and note that the majority makes no attempt to do so.

Having determined that defendant had been prejudiced by the undercover policeman's identification testimony, and that no curative instruction could neutralize the damage done, the court acted well within the bounds of discretion in acceding to defendant's request that the trial be aborted. The court's refusal to reconsider its ruling was entirely reasonable given that the sole basis advanced for reconsideration was the defense counsel's failure to communicate with his client before making the mistrial motion.

Clearly, the trial court was in the best position to rule on the merits of defendant's withdrawal request, having observed first hand the circumstances leading to and attending the mistrial motion. This court now deprives the trial court of nearly all discretion in determining whether a disposed-of motion may be withdrawn, finding in effect that the mere representation of defense counsel that defendant did not assent to the motion makes it as if the motion had never been made. In my view, motions which are made, argued and decided are entitled to considerably more integrity than has been afforded in this case. At the very least, the trial court should have some discretion to determine whether the withdrawal is warranted.