THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v
BENITO LOPEZ, Appellant.

First Department, April 23, 1987

### APPEARANCES OF COUNSEL

*Bruce J. Cohen* for appellant.

*Laura M. Barnhill* of counsel *(Norman Barclay* with her on the brief; *Robert M. Morgenthau, District Attorney,* attorney), for respondent.

### OPINION OF THE COURT

ASCH, J.

The facts are essentially those set forth in the dissent. As the dissent correctly states, the defendant initially gave answers in the plea allocution inconsistent with his plea. He denied that he had intended to cause serious physical injury to the deceased, a required element of manslaughter in the first degree. He also raised the claim of self-defense. However, the further inquiry pursued by the court as to the circumstances of the commission of the crime clearly established the essential elements of manslaughter in the first degree *(see, People v Serrano,* 15 NY2d 304, 308).

In the course of the allocution, the court asked defendant where he stabbed the deceased. He received the response, "Close to the heart." The court further asked defendant, "just before you plunged your knife into Herbert William Baxley, did you have an opportunity to leave the area without being molested?" The defendant equivocated, "It was out on the street. There was a lot of people around us." The court persisted, "Did anybody prevent you from leaving the scene?" and defendant answered, "No, I wasn't being held or anything." In a further attempt to clarify that self-defense was not a viable issue, the court then queried, "Were you free to leave?" The defendant at this point asked to speak with his attorney. After a conference, he responded to the question as to whether he was free to leave the area by answering, "Yes, Your Honor, I guess I was."

This further inquiry laid to rest any doubt as to defendant's intent to cause *serious* physical injury since he admitted stabbing the deceased in the chest near the heart. It also negated any possible defense of justification since defendant admitted he was free to leave at the time of the stabbing.

The dissent asserts that defendant denied having the intent

to cause serious physical injury and it raises the issue of self-defense by relying on defendant's statements that he wanted to stop the deceased from coming toward him, that he feared for his life. However, as we have noted in a prior case: "[F]rom his own admission that he fired three shots at the victim, one could readily infer an intent to commit murder. In a similar case, involving a plea also, where it was claimed that the defendant's admissions did not show an intent to inflict serious physical injury, this court noted 'To convict it is not necessary that there should be an explicit admission of such intent as distinct from a finding. Here the acts themselves bespeak the intent' (*People v Castro,* 44 AD2d 808, affd 37 NY2d 818). Likewise, in this case, defendant's acts bespeak the intent. Where the record shows that the defendant 'admitted committing the acts alleged and his intent' (to commit the crime to which he pleaded) 'is "readily inferable" from his statements regarding the circumstance of the crime' (*People v McGowen,* 42 NY2d 905, 906), the court is under no duty to make any further inquiry." (*People v Pascale,* 66 AD2d 653, 654, *affd* 48 NY2d 997.)

Likewise, here the elements of the crime, although not admitted specifically by defendant in an explicit statement, did appear clearly from his recital of the facts (*see, People v Serrano, supra,* at 309-310).

Even if the court had not made this further inquiry establishing all the elements of the pleaded crime including intent to cause serious physical injury and lack of justification, defendant did not move to withdraw his plea or raise the issue in the court of first instance. Therefore, he has waived it as a matter of law, and, under the circumstances, we choose not to exercise our discretionary power to review any alleged error in the allocution.

In *People v Serrano* (15 NY2d 304, *supra),* the Court of Appeals held that where defendant's own statements should alert the trial court to the insufficiency of a guilty plea, there was no need for defendant to interpose a motion to withdraw that plea, unlike the situation where nonrecord facts are said to undermine the validity of a plea (*supra,* at 309).

Thereafter, however, in a case where defendant sought to vacate a guilty plea, upon appeal, based on a claim that the elements of the crime were not clearly spelled out in the statements he made to the court at the time he entered his plea (substantially the facts herein), the Court of Appeals

expressly held: "Not having raised the issue by motion to vacate or otherwise in the court of first instance, no error has been preserved for review". *(People v Warren,* 47 NY2d 740, 741.)

Superficially, it is arguable that the better practice would be to allow an appeal as a matter of law whenever an invalidity is apparent from the record, without the necessity for a motion to withdraw the plea being made. However, under CPL 470.05 (2), it appears that failure by the defendant to raise the issue at nisi prius will not preserve it for appellate review as a matter of law. This is a statutory expression of the blackletter rule that a party may not raise an issue for the first time in an appellate court. We, of course, retain our discretionary power, as an intermediate appellate court, to reverse in the interest of justice (CPL 470.15 [3] [c]) in the appropriate case, where such an issue has not previously been raised.

On reflection, it seems to be better policy to apply CPL 470.05 (2) and the general rule in appeals where an apparent invalidity is present on the record since defendant had not given the plea court notice of any objection or attempted to withdraw his plea. He has not given the trial court an opportunity to correct any problem, by presenting it to that court. Moreover, to allow a defendant to raise a claim of error appearing on the record for the first time on appeal would encourage him to take unfair advantage of the People in the hope that the passage of time will prejudice the People's case on any retrial. "The requirement that a claim must be timely raised in order to create a question of law is grounded in large part in the need to preserve limited judicial resources and avoid untoward delay in the resolution of criminal proceedings. Certainly, every defendant must be provided at least one opportunity to assert any defense or any claim that the proceedings against him are in some way tainted by a violation of the law. At the same time, the very real interest of the State in achieving finality in a criminal prosecution mandates that such objections be timely raised." *(People v Michael,* 48 NY2d 1, 6.)

Of course, there are "narrowly drawn" exceptions to this general rule that a timely objection or request is necessary to create an issue reviewable as a matter of law, since "certain principles of law are deemed so fundamental to our criminal justice system that a claimed violation of those principles creates a question of law despite the failure to timely raise

that claim in the courts below". *(People v Michael, supra,* at 6.)

However, even constitutional issues have been held to be subject to forfeiture if not timely raised. These include statements taken in violation of defendant's right to be secure in his person against unreasonable seizure *(People v Patterson,* 53 NY2d 829) or *Miranda* warnings *(People v Booker,* 49 NY2d 989), and physical evidence seized following a warrantless entry *(People v Martin,* 50 NY2d 1029). Also, the right to speedy trial may be deemed waived by failure to timely object *(People v Lieberman,* 47 NY2d 931).

The Court of Appeals has apparently indicated that the issue presented herein is still an "open" one. Thus, in a footnote, they say: *"People v Francis* (38 NY2d 150); *People v Beasley* (25 NY2d 483); and *People v Serrano* (15 NY2d 304) all hold that where defendant's responses alert the court to the insufficiency of his guilty plea defendant's failure to move to withdraw the plea does not foreclose consideration of the issue on appeal. * * * If, however, *Claudio's* broader statement *(People v Claudio,* 64 NY2d 858) be deemed to bar direct appeal because the issue was not preserved collateral review is, nonetheless, barred". *(People v Cooks,* 67 NY2d 100, 103, n 1.) The Court of Appeals, in this footnote, simply referred to the seemingly disparate case law and in the text of the opinion noted, "[w]e need not on the present record attempt to reconcile the language of the cases" *(People v Cooks, supra,* at 103).

However, in *People v Claudio (supra),* decided after the other cited cases in the footnote, the court reiterated the rule that defendant's argument as to the validity of his guilty plea is *not* preserved for appellate review because he neither moved to withdraw the plea before sentencing nor raised the issue by a motion to vacate the judgment of conviction.

Defendant is, in effect, a professional criminal, involved in purse snatching before he was 15 years of age. He escaped from the Training School and was next apprehended driving a stolen auto after a chase through the streets at high speed. He has been arrested at least 15 times in the past and has been convicted of three felonies. It is interesting and perhaps illuminating to read in the probation report, relating to a robbery committed by defendant and one, Otero, in The Bronx on November 6, 1972 (for which defendant was convicted upon his plea of guilty), that: "While Otero admits his guilt, Lopez hedges and refuses to admit outright complicity, however,

neither defendant indicated a desire to withdraw their pleas [sic]."

The probation report relating to the present offense notes a report that one of the witnesses to the homicide was contacted by defendant (while he presumably was in detention) and asked why she testified at the Grand Jury.

Defendant is not a novice in court procedures and plea allocutions. He was experienced and made a calculated judgment, after conferring with his attorney and family, to enter this plea.

After the trial had begun, the court pointed out that on the day before, there had been discussions at the Bench concerning a negotiated plea. It also noted that *Rosario* material was turned over to defendant's attorney, and at the request of the attorney, both defendant and the attorney examined the material and discussed the relative merits of the People's case and that of the defense.

Evidence furnished at the *Wade* hearing and information in the *Rosario* material indicated that two eyewitnesses had confronted the deceased and neither had seen the deceased with a knife, nor was a knife recovered from or near the body or anywhere near the scene. The court had then declared a recess so that defendant could have an opportunity to talk to his wife and family and further consult with his attorney. After this recess, the defendant then advised the court that he wished to plead guilty to manslaughter in the first degree. After preliminary questioning as to pedigree and drug use, covering almost three pages of transcript, the court questioned defendant as follows:

"THE COURT: Mr. Lopez, do you feel you've had enough time to consult with your attorney, Mr. McKeon, with regard to your withdrawal of the plea of not guilty and entering a plea of guilty to manslaughter in the first degree?

"THE DEFENDANT: Yes, sir.

"THE COURT: Have you had enough time?

"THE DEFENDANT: Yes.

"THE COURT: Are you satisfied with the services of your attorney, Mr. McKeon?

"THE DEFENDANT: Yes, sir.

"THE COURT: And Mr. McKeon, have you discussed the strengths of the People's case and all possible defenses with the client, Mr. Lopez?

"MR. MCKEON: Yes, I have, Judge.

"THE COURT: And based upon that, Mr. Lopez, are you convinced that you now prefer to enter this plea of guilty to manslaughter in the first degree rather than defend this charge of murder in the second degree? Is that what you wish to do?

"THE DEFENDANT: Yes.

"THE COURT: Mr. Lopez, do you understand that you have a right, if you wish, to continue your plea of not guilty to murder in the second degree and to go to trial? Do you understand that you have the right if you wish?

"THE DEFENDANT: Yes.

"THE COURT: And also do you understand that at the trial that you have a right to be represented by counsel free of charge if you cannot afford one and you also have a right to cross-examine and confront witnesses that are produced by the District Attorney's Office at that trial and you also have the right to remain silent if that is what you wish to do and you have the right to put the state to its proof on the record and you would be convicted only if the District Attorney established each of the elements of the particular crime charged beyond a reasonable doubt to the satisfaction of this jury? Do you understand all of these rights?

"THE DEFENDANT: Yes, sir.

"THE COURT: Do you understand that you also have the right to have a jury decide the case against you and the jury must be unanimous in their verdict as to your guilt or non guilt? Do you understand that?

"THE DEFENDANT: Yes, sir.

"THE COURT: Mr. Lopez, do you understand by pleading guilty to manslaughter in the first degree that you are giving up all these rights and a guilty plea is the same as a conviction after trial? Do you understand that?

"THE DEFENDANT: Yes, sir.

"THE COURT: And further, Mr. Lopez, do you realize by pleading guilty to this felony, manslaughter in the first degree, that if you are convicted of another crime in the future, within the next ten years the punishment for that crime in the future, if convicted, will be increased both as to its minimum and its maximum range? Do you understand that?

"THE DEFENDANT: Yes, sir.

"THE COURT: Mr. Lopez, has anybody, and that includes this

Court, this Judge, this District Attorney, your lawyer, the police, anyone threatened you, coerced you or in anyway influenced you against your own free will in order to get you to withdraw your not guilty plea to murder in the second degree and plead guilty to manslaughter in the first degree? Has anybody coerced, threatened you in anyway or influenced you against your own will?

"THE DEFENDANT: No, your Honor.

"THE COURT: Are you entering this plea of guilty to manslaughter in the first degree voluntarily of your own free will?

"THE DEFENDANT: Yes, sir.

"THE COURT: Now, with regard to sentence or any other disposition or consideration, have any promises been made to you by anyone in connection with this plea of guilty to manslaughter in the first degree other than the promises I make to you that on the day of sentence if you are a predicate felon the minimum sentence will be six years and the maximum will be twelve years and if you successfully controvert the predicate felony statement supplied by the district attorney and if you are to be treated as a first offender, the minimum sentence will be five years and the maximum will be fifteen years? Have any other promises other than what I just stated been made to you with regard to this negotiated plea and sentence bargain.

"THE DEFENDANT: No, sir.

"THE COURT: Mr. Lopez, at this point I am going to ask you to tell me in your own words what happened on February 12, 1983 relative to this incident.

"THE DEFENDANT: What would you like to know, the whole story?

"THE COURT: The whole story.

"THE DEFENDANT: It is necessary?"

It is readily apparent that defendant made a studied decision to plead guilty after extensive consultation with his attorney and family and with full awareness of the evidence against him.

Even where an inconsistency remains on the face of the record without any attempt at clarification by the court, there should be a showing of prejudice by the defendant before this court will exercise its discretionary power. Otherwise, we will fall into the unenviable position of enunciating a rigid, per se rule for the invocation of a discretionary power.

As the Court of Appeals noted in *People v Nixon* (21 NY2d 338, 355-356, *cert denied sub nom. Robinson v New York,* 393 US 1067): "It should never be enough to undo a plea because of some omission in inquiry at the time of plea without a showing of prejudice * * * While the essence of justice may be procedure there can be a point at which the administration of justice becomes only procedure and the essence of justice is lost." Defendant herein was not aggrieved by the plea bargain and no injustice was done to him.

Accordingly, the judgment of the Supreme Court, New York County (Solomon Katz, J.), rendered January 9, 1984, convicting defendant, upon his plea of guilty, of manslaughter in the first degree, and sentencing him, as a second felony offender, to a term of 6 to 12 years, should be affirmed.

Ross, J. (dissenting). In the interests of justice (CPL 470.15 [3] [c]) I would, as a matter of discretion, vacate defendant's plea of guilty to the crime of manslaughter in the first degree (Penal Law § 125.20), as I find the plea allocution conducted by Criminal Term to be insufficient *(People v Hernandez,* 78 AD2d 816 [1st Dept 1980]).

By a one-count indictment, filed April 14, 1983, a New York County Grand Jury charged defendant with the crime of murder in the second degree (Penal Law § 125.25 [1]). This indictment, in substance, alleged that, in New York County, on or about February 12, 1983, defendant intentionally caused the death of Mr. Herbert William Badgley (Mr. Badgley), "by stabbing him with a sharp instrument".

It is undisputed that, before his violent death, Mr. Badgley and defendant knew each other from, *inter alia,* their participation together in various larcenies. Also, uncontroverted is the fact that, a few days prior to the day on which Mr. Badgley was killed, the defendant and Mr. Badgley had an argument, which resulted in Mr. Badgley cutting defendant's throat with a knife. Twelve sutures were required to treat defendant's wound.

Subsequent to his indictment, and after receiving the advice of counsel and consulting with his common-law wife, defendant agreed to a negotiated plea of guilty to the crime of manslaughter in the first degree in satisfaction of the indictment. My examination of the transcript of the purported plea indicates that the People made their acceptance of that plea "subject to the allocution."

The defendant was sworn, and testified that, although he

had been a heroin addict he was now drug free, and was able to read, write and speak English.

During the plea allocution, in answer to Criminal Term's questions, defendant stated that, on February 12, 1983, he met the deceased in a building, where defendant had gone to cut drugs, and they began to argue. Thereafter, according to the defendant, he and the deceased left the building still arguing, and "as we were walking he [deceased] had his knife out and I had my knife out and he stopped and he confronted me again. That is where I came and stabbed him".

After defendant's admission that he stabbed deceased, Criminal Term asked him a series of questions, which were obviously designed to elicit responses consistent with a plea to the crime of manslaughter in the first degree. However, the defendant's answers to those questions were *inconsistent* with such a plea, since the defendant did not admit that he intended to cause serious physical injury to the deceased, an essential element of the crime of manslaughter in the first degree (Penal Law § 125.20 [1]; *People v Swinson,* 111 AD2d 275, 277 [1985]), and raised the question of self-defense. The subject questions and answers are set forth in the transcript of the plea, as follows:

"THE COURT: Did you intend to at that time that you stabbed him to cause serious physical injury to him?

"THE DEFENDANT: Not at that time, your Honor.

"THE COURT: Did you actually cause the death of [deceased]?

"THE DEFENDANT: From the stab wound, yes.

"THE COURT: And at the instant that you caused his death, were you emotionally disturbed?

"THE DEFENDANT: I was afraid he had already cut my neck.

"THE COURT: And would you indicate that you were emotionally involved and disturbed with regard to this incident at the time that you caused the death of [deceased]?

"THE DEFENDANT: I feared for my life. I didn't know what intentions [deceased] had * * *

"THE COURT: When you stabbed him did you intend to cause serious physical injury? When you inflicted that knife wound, did you intend to cause serious physical injury?

"THE DEFENDANT: No.

"THE COURT: What did you intend?

"THE DEFENDANT: I just wanted to get him away from me. I just didn't want to get, if he cut me once before I figured he

would have stabbed me then too. I was driving and he jumped in the back seat and cut my neck * * *

"THE COURT: And then I ask you * * * at the time that you stabbed [the deceased] with your knife, what did you intend to do by stabbing him?

"THE DEFENDANT: *I didn't want to hurt him, but I wanted to stop him from coming towards me.*

"THE COURT: Did you realize by stabbing him you could inflict and cause serious physical injury by plunging the knife into his body? Did you realize it at that time?

"THE DEFENDANT: I wasn't thinking at that time. I was thinking about myself."

The answers of the defendant, quoted *supra,* prompted the Assistant District Attorney to indicate to the court that the question of self-defense and defendant's intent were not satisfied by the allocution. In substance, by his request of the court, the Assistant District Attorney was alerting Criminal Term to the obvious fact that defendant's recital of the circumstances of the crime was inconsistent with a plea of guilty to the crime of manslaughter in the first degree, since the defendant denied an essential element of the crime, in that he did not admit he intended to cause serious physical injury to the deceased, and the allocution indicated that the defendant may not have been guilty of criminal conduct, since he may have had the defense of justification, which would preclude the acceptance of the plea *(see, People v Dingelday,* 84 AD2d 962, 963 [1981]).

In order to sustain the instant plea, the majority contends that the defendant did not have a defense of justification, because he responded to the question of Criminal Term "as to whether he was free to leave the area by answering, 'Yes, Your Honor, I guess I was' " *(see,* majority opn, at 235). However, the majority overlooks the fact that the record indicates this answer of the defendant did not even convince the Assistant District Attorney or Criminal Term that the plea should be accepted. Subsequent to that answer, the Assistant District Attorney, as mentioned *supra,* advised Criminal Term: "I still feel that we have an issue of self-defense here, your Honor. And I also want the Court to inquire as to his [defendant's] intent * * * because he has not really made a case for Man 1". Criminal Term accepted the Assistant District Attorney's criticism of the plea, and conducted a further inquiry that exclusively concentrated on where in the body the wound was inflicted.

The law is well established in this State that there is no "uniform mandatory catechism" for the entry of a guilty plea *(People v Nixon,* 21 NY2d 338, 353 [1967], *cert denied sub nom. Robinson v New York,* 393 US 1067 [1969]; *People v Lewis,* 94 AD2d 670, 671 [1st Dept 1983], *affd* 61 NY2d 9 [1983]). However, while it is not necessary for a defendant to use any particular words in order to enter a plea of guilty, "if the circumstances of the commission of the crime as related by the defendant [in his plea of guilty] do not clearly spell out the crime to which the plea is offered, then, the court should not proceed, without further inquiry, to accept the guilty plea as a valid one" *(People v Serrano,* 15 NY2d 304, 308 [1965]).

In the case of *People v Serrano (supra)* the Court of Appeals states (at 310): "[B]efore accepting a plea of guilt *[sic]* where the defendant's story does not square with the crime to which he is pleading, *the court should take all precautions to assure that the defendant is aware of what he is doing"* (emphasis supplied).

After Criminal Term had been requested, as mentioned *supra,* by the Assistant District Attorney to further inquire of the defendant concerning his intent when he stabbed the deceased, the following exchange took place between Criminal Term and the defendant:

"THE COURT: Perhaps an inquiry into the area as to where the knife wound was inflicted, that might clarify it. What part of [the deceased's] body did you plunge the knife into? * * * [T]he deceased, what part of his body did you put the knife into?

"THE DEFENDANT: I didn't take any aim, it just happened.

"THE COURT: Where did the knife go?

"THE DEFENDANT: From the autopsy in the chest.

"THE COURT: What part of the chest? In the middle, left or right?

"THE DEFENDANT: Close to the heart.

"THE COURT: For the record I'm satisfied that we have a proper allocution".

I disagree with the majority's conclusion that there was a proper allocution, as a result of the further inquiry of the defendant. An examination of this further inquiry, as quoted *supra,* plainly indicates that Criminal Term completely ignored the mandate of *People v Serrano (supra).* It did not inform the defendant of the inconsistency in his plea, and the

court's efforts to clarify the inconsistency was insufficient, in that it did not satisfy the question of the defendant's claim of self-defense. Notwithstanding the negotiated plea, and the defendant's familiarity with the criminal justice system, as a result of his extensive criminal record, I find that Criminal Term erred in accepting the plea of guilty, when the defendant's repeated statements indicated the possibility of a defense of justification. In fact, the record indicates that the Assistant District Attorney expressed his opinion that this allocution may show that defendant had a possible defense of justification, and accordingly, may not be guilty of any crime.

Therefore, in accordance with our decision in *People v Hernandez* (78 AD2d 816, *supra),* I find that it was error for Criminal Term to accept the plea. Furthermore, I find this to be a case that, "as a matter of discretion in the interest of justice * * * the plea [should] be vacated" *(People v Hernandez, supra,* at 817).

As the court noted in *People v Lee* (90 AD2d 960, 961 [1982]), "At the very least the court should have advised the defendant his admissions were not consistent with a charge of [manslaughter in the first degree] and 'inquired further whether defendant nevertheless wished to plead guilty to avoid the risk of a jury verdict (see *North Carolina v Alford,* 400 US 25)' *(People v Bellis,* 78 AD2d 1014)."

Although the defendant did not move to withdraw his plea, this issue is properly before us, as the defendant's responses during the allocution alerted Criminal Term to the fact that there was an issue as to the sufficiency of the plea *(People v Cooks,* 67 NY2d 100, 103, n 1 [1986]; *see also, People v Hernandez, supra).*

The majority concedes that we have a right to exercise our discretionary power to reverse in the interest of justice (CPL 470.15 [3] [c]), where such issue was not raised at the trial court. In this case, I go further and find that the issue was raised, since the trial court was actually alerted to the defective plea allocution by the Assistant District Attorney, as indicated *supra.*

Moreover, I reject the majority's position that this court adopt a hard and fast rule that "[e]ven where an inconsistency remains on the face of the record without any attempt at clarification by the court, there should be a showing of prejudice by the defendant before this court will exercise its discretionary power." Herein, the defendant in his defective plea,

not only did not admit an essential element of the crime of manslaughter in the first degree, he raised the question of self-defense, as discussed *supra*. In my opinion, to apply the majority's suggested rule in a case like this would be harsh and unjust.

Upon the basis of my finding that the plea should be vacated, it is not necessary to reach the other issues raised by defendant.

SANDLER, J. P., KASSAL and WALLACH, JJ., concur with ASCH, J.; ROSS, J., dissents in a separate opinion.

Judgment, Supreme Court, New York County, rendered on January 9, 1984, affirmed.