99 N.Y.2d 76 (2002)
781 N.E.2d 894
751 N.Y.S.2d 830
THE PEOPLE OF THE STATE OF NEW YORK, Respondent,
v.
GEORGE GONZALEZ, Appellant.
THE PEOPLE OF THE STATE OF NEW YORK, Respondent,
v.
LUIS LOPEZ, Appellant.
Court of Appeals of the State of New York.
Argued September 6, 2002.
Decided October 24, 2002.
*77 White & Case LLP, New York City (Douglas A. Eisner, Marc L. Moore and Stefan M. Mentzer of counsel), and Legal Aid Society Criminal Appeals Bureau, Brooklyn (Andrew C. Fine of counsel) for appellant in the first above-entitled action.
*78 Robert M. Morgenthau, District Attorney, New York City (Christopher P. Marinelli and Mark Dwyer of counsel), for respondent in the first above-entitled action.
*79 Center for Appellate Litigation, New York City (Jonathan M. Kirshbaum and Robert S. Dean of counsel), for appellant in the second above-entitled action.
Robert T. Johnson, District Attorney, Bronx (Kimberly Morgan, Joseph N. Ferdenzi and Nancy D. Killian of counsel), for respondent in the second above-entitled action.
Chief Judge KAYE and Judges LEVINE, WESLEY, ROSENBLATT and GRAFFEO concur with Judge CIPARICK; Judge SMITH concurs in result in a separate opinion.
Chief Judge KAYE and Judges LEVINE, WESLEY, ROSENBLATT and GRAFFEO concur with Judge CIPARICK; Judge SMITH dissents and votes to reverse in a separate opinion.

*80 OPINION OF THE COURT
CIPARICK, J.
Defendant in each of these unrelated appeals was convicted of criminal sale of a controlled substance in the third degree (Penal Law § 220.39 [1]) and criminal sale of a controlled substance in or near school grounds (Penal Law § 220.44 [2]) based on a single drug transaction. Defendants now claim that their simultaneous convictions for offenses based on a single act violate the Fifth Amendment's prohibition against double jeopardy.
The facts of these "buy-and-bust" cases are straightforward. In People v Gonzalez, an undercover narcotics officer approached a man entering a store in Manhattan and asked where he could purchase drugs. Without answering, the man walked over to defendant, asked him if he had "anything" and told him that the undercover was "looking." Defendant said "you know how it works."
Defendant then whistled across the street to Frederico Sepulveda and raised two fingers. Defendant instructed the officer to follow the man across the street to a Chinese restaurant *81 around the corner from a school. The two men entered the restaurant with Sepulveda following behind them. Inside the restaurant, the man told Sepulveda that defendant said to "give [the officer] one and to give me one too." After handing the man a "small object" in exchange for a sum of money, Sepulveda asked the officer, "how many do you want?" The officer replied, "one," and handed Sepulveda $10 in prerecorded buy money in exchange for a glassine of heroin.
After the sale, the officer radioed the field team that he made a "positive buy" and gave a description and location of the sellers. Within minutes, the field team arrived at the location and apprehended defendant and Sepulveda, both of whom matched the descriptions given by the undercover officer. Shortly thereafter, the undercover officer made a drive-by confirmatory identification of both men. Although the arresting officer recovered heroin and prerecorded buy money from Sepulveda, no drugs were recovered from defendant.
Following a jury trial, defendant was convicted of two counts of criminal sale of a controlled substance in the third degree and one count of criminal sale of a controlled substance in or near school grounds, all class B felonies for which he received concurrent sentences. The Appellate Division affirmed the conviction and a Judge of this Court granted defendant leave to appeal.
In People v Lopez, an undercover narcotics officer approached defendant and Melvin Rennock who were standing outside a building located 420 feet from a public school in Bronx County. The officer asked defendant for heroin and defendant instructed him to follow Rennock inside the building. Rennock led the officer to a small "mailbox area" where he asked the officer how many he wanted. The officer replied that he wanted one and handed Rennock $10 in prerecorded buy money. In return, Rennock handed the officer one glassine of heroin.
After completing the transaction, the officer returned to his car and radioed the backup team with a description and location of the sellers. Approximately 20 minutes later, defendant was apprehended after another officer, acting as ghost, observed him leave the building and enter a car. After a drive-by confirmatory identification by the undercover officer, defendant was placed under arrest; no drugs or prerecorded buy money were recovered from defendant's person.
Defendant was convicted, following a jury trial, of criminal sale of a controlled substance in or near school grounds, criminal *82 sale of a controlled substance in the third degree and two counts of criminal possession of a controlled substance in the third degree, all class B felonies for which he was sentenced concurrently. The Appellate Division modified by vacating defendant's conviction of one count of criminal possession of a controlled substance in the third degree and dismissing that count and, as modified, affirmed. A Judge of this Court granted defendant leave to appeal.

Analysis
The Double Jeopardy Clause consists of three separate guarantees: (1) "It protects against a second prosecution for the same offense after acquittal. [(2)] It protects against a second prosecution for the same offense after conviction. [(3)] And it protects against multiple punishments for the same offense" (North Carolina v Pearce, 395 US 711, 717 [1969]). The cases before us fall within the third category as each involves a single trial based on the same act, resulting in concurrent sentences.
The first two categories implicate the jurisdiction and authority of the court and are thus reviewable by this Court despite a defendant's failure to object (see People v Michael, 48 NY2d 1 [1979]). As we stated in Michael, the "obvious jurisdictional overtones" attendant to a double jeopardy claim presented the Court with a question of law so fundamental that it rendered preservation of the issue unnecessary (see Michael, 48 NY2d at 7). Thus where a defendant is retried, despite a constitutional double jeopardy defense, a failure to object is not fatal to his claim.
The cases before us, however, are quite different. Each defendant faced multiple charges arising out of a single act that led to concurrent sentences. These cases, as contrasted to Michael, turn not on the jurisdiction or authority of the court but on whether the Legislature intended to authorize such multiple punishments (see Missouri v Hunter, 459 US 359, 366-368 [1983]). That question may only be reached following a threshold determination of "what punishments the Legislative Branch has authorized" (Whalen v United States, 445 US 684, 688 [1980]). As long as the Legislature intended to impose cumulative punishments for a single offense, "a court's task of statutory construction is at an end" and no constitutional double jeopardy claim is implicated (Missouri v Hunter, 459 US at 368-369).
Since the permissibility of multiple punishments in this situation presents a question of statutory interpretation, a defendant *83 is required to preserve such a claim. Neither defendant did so, and we therefore may not consider their claims here (see CPL 470.05 [2]).[*]
With respect to defendant Lopez, we perceive no abuse of discretion in the trial court's admission of expert testimony on street-level narcotics transactions. The expert's brief testimony was admitted for the limited purpose of explaining the absence of prerecorded buy money and the sellers' respective roles in street-level drug sales (see People v Brown, 97 NY2d 500 [2002]). To the extent defendant claims that the court failed to give an appropriate limiting instruction, he waived this claim by declining the court's offer to deliver such an instruction.
Defendant Gonzalez's challenge to the hearing court's probable cause determination involves a mixed question of law and fact (see People v Brown, 95 NY2d 942, 943 [2000]), and therefore our review is limited to whether there is record support for the lower courts' determinations (see People v McIntosh, 96 NY2d 521, 524 [2001]). Such record evidence exists here. Defendant's remaining challenge to the sufficiency of the evidence is without merit.
Accordingly, the order of the Appellate Division, in each case, should be affirmed.
SMITH, J. (concurring in People v Gonzalez and dissenting in People v Lopez). I believe that defendants' respective double jeopardy claims did not need to be preserved before their merits could be addressed, but that the claims are without merit. Thus, I concur in People v Gonzalez. Because the introduction of expert testimony in People v Lopez was unnecessary and prejudicial, I dissent in that case.

Preservation of Double Jeopardy Claims
Defendants claim that their convictions and sentences of both criminal sale of a controlled substance in or near school grounds and criminal sale of a controlled substance in the third degree contravened legislative intent, and thus violated their double jeopardy rights. Since defendants were given concurrent sentences, they claim that the punishment consists in being convicted and sentenced for two offenses. Defendants rely on Ball v United States (470 US 856 [1985]), in which the Court *84 held that a
"second conviction, whose concomitant sentence is served concurrently, does not evaporate simply because of the concurrence of the sentence. The separate conviction, apart from the concurrent sentence, has potential adverse collateral consequences that may not be ignored. For example, the presence of two convictions on the record may delay the defendant's eligibility for parole or result in an increased sentence under a recidivist statute for a future offense. Moreover, the second conviction may be used to impeach the defendant's credibility and certainly carries the societal stigma accompanying any criminal conviction" (470 US at 864-865).
Today, the Court makes an unwarranted distinction between a claim challenging a second prosecution for the same offense either after acquittal or conviction, and a claim challenging multiple punishments for the same offense. Unlike the former, the majority argues, the latter is not of a fundamental nature and is considered abandoned if not raised at the trial level. Despite the majority's view, all of the claims are branches of the same tree since they all involve a violation of the same constitutional clause. A double jeopardy violation grounded in multiple punishments is no less fundamental than one grounded in sequential prosecutions. No Supreme Court case has held otherwise.
The basic problem with the majority position is that it ignores federal jurisprudence on double jeopardy as it applies to multiple punishments. The majority concludes that double jeopardy is not involved where a legislature authorizes punishments for what amounts to the same crime. In making that determination, a court necessarily addresses the Double Jeopardy provision of the Federal Constitution. The Supreme Court so stated in Whalen v United States (445 US 684 [1980]) and in Missouri v Hunter (459 US 359 [1983]).
In Whalen, the Supreme Court reversed a decision of the District of Columbia Court of Appeals which held that consecutive sentences could be imposed for the crimes of rape and murder of the same victim. The Court held that the imposition of consecutive sentences was contrary to the intent of Congress and violated the Double Jeopardy provision of the United States Constitution. The Court thus made clear that the Double Jeopardy provision of the Constitution was implicated in rendering a decision as to the intent of Congress on punishment.
*85 The dissent by Justice Rehnquist in Whalen castigated the majority for relying on the Double Jeopardy Clause, stating: "Unlike the Court, I believe that the Double Jeopardy Clause should play no role whatsoever in deciding whether cumulative punishments may be imposed under different statutes at a single criminal proceeding" (445 US at 705).
Albernaz v United States (450 US 333 [1981]) also states that the imposition of multiple punishments implicates the Constitution. The issue in the case was whether Congress intended consecutive sentences for two conspiracy statutes. In concluding that the intent of Congress was that consecutive sentences be imposed, the Court stated:
"Thus, the question of what punishments are constitutionally permissible is not different from the question of what punishments the Legislative Branch intended to be imposed. Where Congress intended, as it did here, to impose multiple punishments, imposition of such sentences does not violate the Constitution" (450 US at 344).
In Missouri v Hunter, the Supreme Court addressed the issue of "whether the prosecution and conviction of a criminal defendant in a single trial on both a charge of `armed criminal action' and a charge of first degree robberythe underlying felonyviolates the Double Jeopardy Clause of the Fifth Amendment" (459 US at 360). The Supreme Court reiterated that a violation grounded in multiple punishments occurs when a defendant's punishment exceeds that intended by the legislature.
Whether the Legislature intended to provide multiple punishments for the same crime is a question of fundamental constitutional dimension. That this type of double jeopardy claim involves conviction and sentencing by courts, and the other two types involve prosecution by the state, is not significant. All three types expose defendants to double jeopardy.
If the Legislature did not intend that a defendant be found guilty of both offenses, the trial court would have exceeded its jurisdiction in sentencing defendants on the unlawful conviction even though the sentences were concurrent. The trial court would have violated "`the essential nature' of the right to be sentenced as provided by law * * *" (People v Fuller, 57 NY2d 152, 156 [1982], quoting People v Craig, 295 NY 116, 120 [1946]).
*86 Moreover, this Court has consistently held that a claim of an illegal sentence may be raised for the first time on appeal (People v Samms, 95 NY2d 52 [2000]). Thus, "[w]hen dealing with unauthorized sentences, this Court has often applied a narrow exception to the preservation rule" (95 NY2d at 56).
In People v Michael (48 NY2d 1 [1979]), this Court held that preservation was unnecessary to a claim of double jeopardy, in that "there exist certain rules of law, be they founded on the common law, prescribed by statute, or mandated by our Constitutions, which are so basic to the validity of a criminal proceeding that the failure to observe such a rule may be raised at any time during the appellate process," and the "constitutional prohibition against double jeopardy is fundamental not only to the process of criminal justice, but to our system of government itself. It is, moreover, a doctrine with obvious jurisdictional overtones" (48 NY2d at 6-7). The Court found these factors dispositive in holding "that a double jeopardy defense based on the State and Federal Constitutions poses a question of law reviewable in this court despite the failure to raise it at the trial level" (id. at 7). This case is simply an application of People v Michael.

Merits of Double Jeopardy Claims
On the merits, when conduct results in the violation of two statutory provisions, the test to be applied to determine whether there are two offenses or only one, is whether each provision requires proof of a fact which the other does not (see Missouri v Hunter, supra, 459 US at 366, quoting Blockburger v United States, 284 US 299, 304 [1932]). That two statutes proscribe one offense under Blockburger creates a presumption that the Legislature did not intend that a defendant be punished under both. This presumption, however, can be rebutted by a "clear indication of contrary legislative intent" (id., quoting Whalen v United States, 445 US at 692 [emphasis omitted]).
As the People in the Gonzalez case conceded during oral argument, the application of Blockburger leads to the conclusion that criminal sale of a controlled substance in the third degree and criminal sale of a controlled substance in or near school grounds, as charged and proved, are the "same offense." This is so because only the school grounds sale requires proof of an element not required by third-degree sale (see, Penal Law § 220.44 [2], incorporating by reference all of the operative subdivisions of Penal Law § 220.39). Third-degree criminal *87 sale, however, does not require proof of elements not required by criminal sale in or near a school (id.). Thus, the two statutes are like "concentric circles rather than overlapping circles" (4 LaFave, Israel and King, Criminal Procedure § 17.4 [b] [2d ed]).
As noted, the presumption resulting from the concentric nature of both statutes can be rebutted by a clear indication of contrary legislative intent. That intent is found in the interplay of the two statutes in the Criminal Procedure Law and Penal Law. Section 1.20 (37) of the Criminal Procedure Law provides that "[w]hen it is impossible to commit a particular crime without concomitantly committing, by the same conduct, another offense of lesser grade or degree, the latter is, with respect to the former, a `lesser included offense.'" While it is impossible to commit sale in or near a school without also committing third-degree sale, they are both class B felony offenses, and thus, one is not of a "lesser grade or degree" than the other. Since both counts are concurrent (see, CPL 300.30 [3]; Penal Law § 70.25 [2]), and the third-degree sale count is not a lesser included offense of sale in or near a school, they are "non-inclusory," and the trial court had the discretion to submit both counts to the jury (CPL 300.40 [3] [a]). Had the Legislature intended not to punish the same conduct with two statutes, it would have ensured that the two counts met the definition of "inclusory concurrent counts" (see, CPL 300.30 [4]; 300.40 [3] [b]).
The Legislature's intention to allow for simultaneous convictions for third-degree sale and sale in or near a school is further evidenced by Penal Law § 70.25 (2), which addresses situations where, as here, "more than one sentence of imprisonment is imposed on a person for two or more offenses committed through a single act," and mandates that the sentences run concurrently. That the Legislature did not provide for cumulative sentencing is not evidence to the contrary since, as the Supreme Court held in Ball, a conviction is detrimental even if its sentence runs concurrently.
Thus, while the merits of the double jeopardy argument should be addressed, defendants' contention must be rejected. "With respect to cumulative sentences imposed in a single trial, the Double Jeopardy Clause does no more than prevent the sentencing court from prescribing greater punishment than the legislature intended" (Missouri v Hunter, 459 US at 366). It is clear that the New York Legislature intended to punish both crimes for which each defendant was found guilty.

*88 Expert Testimony
In People v Lopez, the evidence was that the defendant directed an undercover officer into a building where the drug transaction took place. After the sale, defendant was seen entering the building, exiting, and then entering the building again. The next time defendant exited the building, about 20 minutes after the sale, he got into the passenger seat of a car, with a female sitting in the driver's seat, and a young child in the rear seat. Police officers stopped the car several blocks away from the building and arrested defendant who did not have any prerecorded buy money. The officers did not search the driver or the car. The codefendant, who had remained in the building during the entire time, was arrested several minutes later in front of the building. He, too, did not have any prerecorded money.
Prior to the introduction of evidence, the defendant objected to any expert testimony as unnecessary and prejudicial. He further argued that any expert testimony would indicate a conspiracy to sell drugs, a charge not contained in the indictment. The objection was renewed at the time that the expert witness took the stand.
Initially, when the prosecution offered the expert's testimony to explain the time gap and the absence of prerecorded money, the court asked:
"How much expert testimony does it need, do you need to explain to a jury that money could be hidden or deposited somewhere else over the 25 minute period? * * *
[H]ow much expert testimony do you need to explain to a jury why money would be missing after 25 minutes? It's not like it was a minute later. I mean I don't understand why wouldn't this fall within a jury's common sense understanding of how a drug transaction could work."
The prosecution responded that "we are presupposing that the jurors are expert enough to understand the intricacies of a buy and bust * * *."
Over defendant's objection, the court eventually agreed that the expert could testify that a "typical drug transaction can involve a break down of roles where two people acting in concert, one steers the undercover to the person who actually exchanges the drugs." The expert could not, however, give any *89 testimony suggesting that "defendants were involved in any broad scale conspiracy or to anything other than the transaction."
After being recognized by the court as "an expert in street level drug activity," the prosecutor asked the police expert to explain the "various roles involved with street level drug activity." Over an objection, the expert answered, "Street level drug operations is multi-faceted. It has a number of different people who are involved * * *." Following this testimony, the court did sustain an objection to the expert's testimony that the individual who acts as the "hand-to-hand" has a number of people who can help him. The expert then defined the role of the steerer, defined "prerecorded buy money" and explained why it is not often recovered. The expert explained the various ways drug dealers secrete money, such as giving it to other individuals, or hiding it in buildings, garbage pails, and any other place where bills can be hidden.
The expert also explained how a "drug organization" works:
"Well, again, the purpose of a drug organization, an organization who sells narcotics is to make money and, again, they go through lengths to protect not only the product of the drugs but also protect their proceeds which is the currency. And that in that vein, they use steps to remove the money or the drugs, whatever which way it happens to be, from the location from where the narcotics are being sold, or some way to secrete it some way so that if something happens such as the police or in some cases rival organization attempting to either get their stash or get their money, they have ways to protect it so it doesn't get apprehended."
An objection to this testimony was overruled.
After the expert testified, defendant's counsel objected, arguing that the testimony was irrelevant and prejudicial. Defendant declined the court's offer of a curative instruction as to the expert's use of the term "drug organization," agreeing with his codefendant that it would underscore the expert's prejudicial testimony regarding a drug organization.
In People v Brown (97 NY2d 500 [2002]), this Court ruled that expert testimony was admissible in order to explain what might have happened to the buy money allegedly given to the defendant. In particular, the expert testimony in Brown "was *90 admitted to explain what might seem, to a lay observer, to be an anomalous factthat someone who allegedly sold drugs to an undercover officer did not have money or drugs when arrested shortly thereafter" (id. at 506). Brown does not stand for the proposition that any time marked money is not found on a defendant, expert testimony can be used. In fact, the Court in Brown cautioned against the unnecessary use of expert testimony (id.).
The expert testimony here did not seek to explain something that is not within the knowledge of the ordinary person. In fact, prior to the expert's testimony, the undercover officer testified to defendant's steering him into a building where the codefendant or "hand-to-hand" gave him the drugs. The "straightforward" facts of this case did not warrant testimony from an expert in street-level drug dealing. It can hardly be described as an anomaly that police officers did not find any prerecorded drug money on either defendant Lopez or his codefendant when they were arrested about 20 minutes after the sale, during which time both were inside the building, the codefendant remained entirely out of sight, and defendant was seen only once. In addition, defendant was inside the car for a short time. It does not require an expert to think of the possibility that the prerecorded money could have been disposed of somewhere in the building, or even in the car, during the 20 minutes after the sale. That possibility can emerge independently even in the mind of a juror who lacks any knowledge of how drugs are sold on neighborhood streets.
Moreover, the expert's testimony about a drug organization or rival drug organizations was evidence of a conspiracy even though conspiracy was not one of the charges in the indictment, and the prosecutor was not obligated to prove a conspiracy beyond a reasonable doubt. When the possibility of disposing of money by a drug organization is reinforced, not just by the prosecutor, but by a police officer whom the court has recognized as an expert, the scales of justice are unevenly balanced against the defendant.
Finally, although this case was tried before our decision in Brown, no limiting instructions were given here. In Brown, this Court required that limiting instructions be given whenever expert testimony was introduced:
"Based on our concern that expert testimony be admitted only for a permissible purpose, we hold that this type of testimony must be paired with appropriate *91 limiting instructions. If and when the trial court allows such testimony, it should inform the jury that it is free to reject it and that the testimony being admitted should in no manner be taken as proof that the defendant was engaged in the sale of narcotics. These crucial instructions should be reemphasized in the concluding charge to the jury" (97 NY2d at 506).
The instructions were designed to aid the truth-seeking function of the jury and should be applied to this case and any case on appeal (see People v Favor, 82 NY2d 254, 265 [1993]). Here, no instructions were given to the jury at the time of the introduction of the expert testimony and only a general instruction was given in the charge to the jury. Thus, the expert's testimony was unnecessary and prejudicial and did not comply with this Court's rule in Brown.
In sum, in both Gonzalez and Lopez the merits of the double jeopardy issue should be addressed and the defendants' argument rejected. In Lopez, the conviction should be reversed because of the unwarranted and prejudicial introduction of expert testimony.
In People v Gonzalez: Order affirmed.
In People v Lopez: Order affirmed.
NOTES
[*] Judge Smith is of the opinion that preservation is not required but nevertheless concludes that the Legislature intended to authorize multiple punishments under the circumstances presented here.