In the Matter of GEORGE COLCLOUGHLEY, Petitioner, v STERLING JOHNSON, JR., as Special Assistant District Attorney, et al., Respondents.

First Department, March 4, 1986

## APPEARANCES OF COUNSEL

*George M. Alexis* of counsel *(Arnold Cohen* and *Steven G. Asin* with him on the petition; *Caesar D. Cirigliano,* attorney), for petitioner.

*Gary R. Weil* of counsel, for Sterling Johnson, Jr., respondent.

### OPINION OF THE COURT

MURPHY, P. J.

Petitioner is charged under New York County indictment No. 3676/85 with criminal sale of a controlled substance in the fifth degree and criminal possession of a controlled substance in the fifth and seventh degrees. His trial on these charges began before respondent Justice Clifford A. Scott on November 26, 1985. Selection of the jury and the alternate jurors was completed on November 27, 1985 and the prosecution commenced presentation of its case on December 2, 1985. Between December 2 and December 5, three police officers and a police chemist testified and were cross-examined by defense counsel. Following completion of the police chemist's testimony on December 5, a Thursday, Justice Scott adjourned all proceedings until Monday, December 9, 1985, based upon the representation of Assistant District Attorney Gary Weil that the last prosecution witness was unavailable due to illness but would be able to testify on the adjourned date. Before adjourning on December 5, Justice Scott ascertained that two jurors would be inconvenienced by the delay in concluding the case. These jurors were excused and replaced with the two alternates.

When proceedings resumed on the morning of December 9, Justice Scott was informed by the prosecutor out of hearing of the jury that his witness was still unavailable due to illness but that another chemist would be available to testify in the original witness' place that afternoon. The case was adjourned until 2:00 P.M. Proceedings resumed at 2:00 but before the jury was called into the courtroom Justice Scott announced that a

juror who had not been present in the morning was still absent. The prosecutor then requested an adjournment until the following day. Justice Scott denied the request, stating that the trial had been going on since November 26, 1985, which was a long time for an uncomplicated proceeding. He indicated that he would call a mistrial rather than adjourn the proceedings another day. Immediately thereafter, the clerk of the court informed Justice Scott that the absent juror had been contacted and had stated he would be present the following day. The jury was then summoned. Justice Scott asked if any of the jurors could not stay until Wednesday, December 11, 1985. The foreperson indicated that he could not because, as he stated, "my absence of my job means a lot of dollars to my company." Juror number three explained that he had "certain commitments in the Health Department" that kept him from attending on the 11th. Immediately after these explanations were given, Justice Scott declared a mistrial and excused the jury.

After the jurors were excused, defense counsel moved for dismissal of the indictment on the ground of double jeopardy, which motion was denied summarily by Justice Scott. Thereafter, this proceeding was commenced pursuant to CPLR article 78, to prohibit any further prosecution of petitioner Colcloughley under indictment No. 3676/85 since a second trial would allegedly violate the double jeopardy clauses of both State and Federal Constitutions and CPL 280.10.

US Constitution 5th Amendment and NY Constitution, article I, § 6 command that no person shall be tried twice for the same offense. The prohibition against double jeopardy is among the most fundamental of constitutional protections, providing a vital check upon the State's power to intimidate its citizenry. *(People v Michael,* 48 NY2d 1, 7 [1979].) Subjecting a defendant to a second trial for the same offense is grossly unfair as it increases the defendant's financial and emotional burdens, prolongs the period of stigmatization often entailed by trial, and may enhance the risk of convicting an innocent defendant by affording the prosecution unwarranted opportunity to tailor its case. *(Arizona v Washington,* 434 US 497, 503 [1978].) The defendant thus has a "valued right to have his trial completed by a particular tribunal". *(Wade v Hunter,* 336 US 684, 689 [1949].)

Jeopardy attaches once the jury is sworn *(Crist v Bretz,* 437 US 28 [1978]), and cannot be reimposed unless the initial proceeding was inconclusively terminated in circumstances

justifying such termination. Circumstances justifying the declaration of a mistrial following which a new trial of the same indictment may be ordered are described in CPL 280.10. Absent prejudicial error depriving the defendant of a fair trial (CPL 280.10 [1]), or gross misconduct by the defendant or a juror (CPL 280.10 [2]), the only ground upon which a new trial may be had is "when it is physically impossible to proceed with the trial in conformity with law." (CPL 280.10 [3].) Put somewhat differently, when the defendant has not acted in a grossly improper way and has not requested or explicitly consented to a second proceeding, retrial is permitted only where " 'there is a manifest necessity for [the mistrial], or the ends of public justice would otherwise be defeated' ". *(People v Michael,* 48 NY2d 1, 9 *supra,* quoting *United States v Perez,* 9 Wheat [22 US] 579, 580; *Matter of Nolan v Court of Gen. Sessions,* 11 NY2d 114, 119 [1962].)

In this case neither party moved for a mistrial, nor is there any indication that there was a basis for either to do so. The mistrial was declared *sua sponte* by the court without the defendant's consent. Under these circumstances a prosecutor wishing to avoid the double jeopardy bar to retrial of the indictment has the burden of demonstrating that the mistrial declaration was manifestly necessary. *(Arizona v Washington, supra,* at p 505; *Hall v Potoker,* 49 NY2d 501, 505 [1980]; *Matter of Nolan v Court of Gen. Sessions, supra,* at p 119) or, in the words of the New York statute, that it was "physically impossible to proceed with the trial in conformity with law." (CPL 280.10 [3]; *Matter of Dickson v Morgenthau,* 102 AD2d 168, 171 [1st Dept 1984].)

The prosecutor has not met this burden. The summary fashion in which the court terminated petitioner's trial affords us little insight regarding the underlying reasons for the action taken. We gather from the record only that the court was irritated by what it took to be an unnecessarily protracted proceeding and did not wish to inconvenience the jury further. The prosecutor's suggestion that the court was motivated out of concern that the jury would "rush to judgment" is completely unsupported. We can find no record of any inquiry by the court disclosing that the jury's deliberations would have been improperly influenced by the unanticipated length of the proceeding. *(See, People v Michael, supra,* at p 11.)* Nor can we find any indication that the court explored alternatives to the declaration of a mistrial as it was bound to do. "[I]t is indispensibly necessary that it appear that prior to

declaring \* \* \* a mistrial, 'the Trial Judge has properly explored the appropriate alternatives, and there is a sufficient basis in the record for a mistrial.' " *(Matter of Ziegler v Morgenthau,* 99 AD2d 989, 991 [1st Dept 1984; Alexander, J., dissenting, quoting *Hall v Potoker,* 49 NY2d 501, 505, *supra],* revd on dissent of Alexander, J., 64 NY2d 932 [1985]; *see also, Matter of Dickson v Morgenthau, supra,* at p 172; *Matter of Respeto v McNab,* 90 AD2d 308, 311 [1st Dept 1982].)

Indeed, there is every indication that petitioner's trial could have been expeditiously concluded within two days of the court's decision to declare a mistrial. The People were ready with their final witness and the absent juror had been contacted and had indicated he would be in attendance the following day. There was nothing to prevent the trial from continuing, much less making it "physically impossible to proceed", but the inconvenience of two jurors and the consequent displeasure of the court.

Juror inconvenience alone is not a ground for calling a mistrial. *(People v Michael, supra,* pp 9-10.) It would be remarkable indeed if defendants could be afforded trials by juries of their peers without causing inconvenience to those summoned to the jury box from what are often busy, important and sometimes lucrative activities. A measure of inconvenience is something which must be countenanced for the jury system to continue *(supra).* Though a court may commendably try to ease the inconvenience of jurors, this cannot be done at the defendant's expense. We cannot stress too strongly that the paramount interest is that of the defendant in having his trial concluded expeditiously in one proceeding before the jury chosen to hear his case. When this end is obscured by a trial court's wholly disproportionate and unreflective solicitude for juror convenience, we are left with the unfortunate task of preventing the gross violation of a defendant's constitutional rights by prohibiting any further prosecution of the indictment upon which the initial trial was based. Public safety is ill served when an indictment must be dismissed without an adjudication of a defendant's guilt or innocence. But when a mistrial is improvidently declared, adherence to fundamental constitutional principles and the statutes of this State leaves us no alternative.

Accordingly, the petition for a writ of prohibition is granted, without costs, and respondents are prohibited from retrying petitioner George Colcloughley on New York County indictment No. 3676 of 1985.

CARRO, MILONAS, ROSENBERGER and ELLERIN, JJ., concur.

Application for a writ of prohibition granted, without costs and without disbursements, and respondents are prohibited from retrying petitioner George Colcloughley on New York County indictment No. 3676/85.