OPINION OF THE COURT
Lewis Bart Stone, J.
Defendants Daniel Capellán and Julio Santos move pursuant to the double jeopardy clauses of the state and federal constitutions as well as Criminal Procedure Law § 40.20 to bar retrial of this case and to dismiss the indictment. The People oppose the motion.
Factual Background
The defendants were indicted for one count of criminal sale of a controlled substance in the third degree stemming from an arrest on June 10, 2006. Their trial began with jury selection and openings on Thursday, February 1, 2007, with testimony of witnesses beginning on February 5, 2007. On Tuesday, February 6, 2007, testimony was completed, the jury heard closing arguments and the court’s instructions on the law, and retired to deliberate. They did not reach a verdict that day[1] and were dismissed and directed to return the next morning, Wednesday, February 7, 2007, to continue deliberations. On the next day, a juror (the sick juror) called and advised the court that he was ill and unable to come to court.
Counsel for Capellán and Santos, with the consent of their clients and the court, agreed on the record to waive the “continuous deliberations” requirement of CPL 310.10 (2) and any right to appeal by reason of such delay, and the case was adjourned to Thursday, February 8, 2007. On that day, a person purporting to be a friend of the sick juror called the clerk to advise that the sick juror was still ill. The court asked the clerk to call the sick juror at the home and cell phone numbers he *339 had provided to the court officers when he was selected as a juror. The sick juror’s cell phone was not answered and a message was left on his home phone answering machine. After waiting an hour with no response from the sick juror, the court, upon suggestion of counsel, dispatched two court officers to the sick juror’s apartment. Upon their return, the officers reported, on the record, that they had banged loudly on the sick juror’s apartment door for five minutes and, after receiving no response, left the building asking the sick juror’s doorman to have him call the court when he returned. Prior to the officers’ return to court, the sick juror called the clerk and said he had been in the bathroom when the officers were there and did not hear them knocking. When the clerk asked the sick juror if he would be able to come to court on Friday, February 9, 2007, to continue his deliberations, he said it was “unlikely.” When asked if he would be able to come five days later, on Tuesday, February 13, 2007 (Monday, February 12, 2007, was a court holiday), the sick juror replied that he would be available if he was not in the hospital with the flu. Counsel indicated that they would again waive the “continuous deliberation” requirement. The court then questioned the remaining 11 jurors as to whether they would return five days later on Tuesday, February 13, to resume deliberations. All jurors except one indicated they could return on February 13, and the remaining juror indicated that such juror would be unable to return because of responsibilities at work.
Based on this situation, the court declared a mistrial and adjourned the matter to Part 81 of the court, the “tier two” part which had sent the case to the court, pursuant to the practices of the New York County Supreme Court, Criminal Part, established by the administrative judge of the court.
The defendants both made the instant motion in Part 81 on the return day. Such court subsequently “forthwithed” the motion to this court for argument and decision.
The defendants each argue that a retrial of this case would violate their constitutional right against double jeopardy, and that the mistrial was in violation of CPL 40.20 in that there was no “manifest necessity” to declare a mistrial. They also contend that the mistrial was in violation of CPL 280.10 (3), which permits a mistrial only “when it is physically impossible to proceed with the trial in conformity with the law.”
*340 Manifest Necessity
Case law is clear that once a jury has been sworn, jeopardy has attached. (Illinois v Somerville, 410 US 458 [1973]; CPL 40.30 [1].) Furthermore, a court may not declare a mistrial solely for its own convenience or that of the jury (People v Michael, 48 NY2d 1 [1979]; Colcloughley v Johnson, 115 AD2d 58 [1st Dept 1986]) and may only do so when there is manifest necessity for the mistrial or ends of justice would otherwise be defeated. (People v Ferguson, 67 NY2d 383 [1986]; Matter of Enright v Siedlecki, 59 NY2d 195 [1983].)
In evaluating whether there was a “manifest necessity” for a mistrial, great deference is given to the trial court to determine whether the mistrial is necessary as the trial court is in the best position to make such a determination. That court also has the duty to consider alternatives to a mistrial and obtain enough necessary information so it is clear that a mistrial is actually necessary. (Ferguson at 388; People v Niccolich, 220 AD2d 461 [2d Dept 1995].) A sua sponte declaration of a mistrial by a court is usually held to be an abuse of discretion, such as where no inquiry is made as to how long a juror will be out or where a mistrial is founded solely on the convenience of the court without any inquiry into the effect of such delay on the jury’s ability to render a fair verdict. (Ferguson, supra; Michael, supra; Matter of Dickson v Morgenthau, 102 AD2d 168 [1st Dept 1984] [court failed to adequately canvass alternative solutions to mistrial].)
Here, unlike in Ferguson where the court made no inquiry as to when the juror would return and declared a mistrial in the defendant’s absence, and Colcloughley, where the court declared a mistrial even though the absent juror told the court he could be present the next day, this court made extensive inquiries of the sick juror regarding his availability as well as of the remaining 11 jurors. The court considered alternative solutions and adjourned the case a full day without the sick juror, and, on the following day with the sick juror still out, made numerous attempts to make phone contact and even went so far as to send court officers to the sick juror’s home in an attempt to ascertain his condition. When the sick juror finally did contact this court, his somewhat suspect behavior and equivocal answers were of no assurance to the court that he would return five days later for deliberations.
Determinations to grant a mistrial have been held proper and manifestly necessary when a court has made similar inquiries *341 regarding a juror’s condition, the length of time such juror might return, and whether the remaining jurors can render a fair verdict. (People v Ramchair, 308 AD2d 601 [2d Dept 2003] [mistrial declared when juror suffered a heart attack]; Matter of Kleigman v Justices of Supreme Ct., Kings County, 285 AD2d 646 [2d Dept 2001] [juror suffered seizure and would need bed rest for one to two weeks after release from hospital]; Matter of Romero v Justices of Supreme Ct., Queens County, 237 AD2d 292 [2d Dept 1997] [case adjourned for five days and calls unanswered on juror’s phone].)
Here, the record shows that repeated and diligent attempts were made to contact the sick juror and the court was faced with a situation in which it did not know when, and indeed if, the sick juror would return for deliberations. His strange behavior, first having a “friend” call, second, not answering his phone, third not answering his door, and fourth, equivocating on his return, concerned the court. At the end of its inquiry there was no certainty that the juror would return.
The further inquiry of the remaining 11 jurors left this court with serious doubts as to whether the ends of justice would be served.
At voir dire the venire were advised as to the approximate length of the trial, so that the parties and the court could evaluate whether time pressures might impact potential jurors’ abilities to hear and determine the case without improper pressures to compromise principles in reaching a verdict. At that time, it was expected by this court and so stated without objection by counsel that the trial would end and deliberations would begin approximately on Tuesday, February 6th, which it did, and that while deliberations would then occur, they would not be expected to run past the end of that week, February 9th. One juror, relying on such voir dire presentation, apparently felt it unnecessary to advise the court of a business conflict by reason of the delay past such time. While the court would have ordered such juror to continue, under the circumstances, the court finds it would have put undue pressure on such juror to continue deliberations in an undistracted manner, which could have affected proper deliberations. Had such juror expressed such reservations at the voir dire, this court, following the usual practice in New York County, would have excused the juror from serving on the case.
On such basis this court made the reasonable conclusion that there was no acceptable alternative to a mistrial. Under *342 the case law, this ruling did not violate defendants’ constitutional right against double jeopardy as such ruling was manifestly necessary and the court had no choice but to declare the mistrial as the trial could not proceed.
Criminal Procedure Law § 310.10 (2)
There is a second and independent reason why the mistrial declaration was necessary and proper. The inability of the jury to continue was clearly at odds with the continuous deliberations mandate of CPL 310.10 (2). Thus, following CPL 280.10 (3), “the court must declare a mistrial and order a new trial of the indictment . . . upon the court’s own motion when it is physically impossible to proceed with the trial in conformity with law.”
CPL 310.10 (2) was amended by Laws of 1995, ch 83, § 290 (chapter 83), effective July 5, 1995, to convert the jury deliberation process in New York for most felonies[2] from one of sequestration to one of continuous deliberation, with exceptions, for a period to sunset in 2001. {See L 1995, ch 83, § 362 [17].) Prior to chapter 83, New York had no requirement of continuous deliberation, but required that deliberating jurors be sequestered and continually supervised, even when a juror had to be hospitalized. {See, e.g., People v Shanholtzer, 119 AD2d 537 [1st Dept 1986].)
The legislative purpose of chapter 83 and a legislative guide to its interpretation may be found in former CPL 310.10 (3) which was added by section 209 of chapter 83, which required the Office of Court Administration to report to the Legislature on the impact of separation of jurors on how the risks of separation would negatively impact on the integrity of jury deliberations. Finding that the change “worked well,” the Legislature in 2001 extended the change from sequestration to continuous deliberations and made it permanent and repealed CPL 310.10 (3) as the study mandated by such subdivision had been completed. (Senate Mem in Support of L 2001, ch 47, 2001 McKinney’s Session Laws of NY, at 1293; L 2001, ch 47, § 2.)
CPL 310.10 (2) does not provide for its waiver by the parties. The record clearly shows the court’s concern as to whether its express requirement could be waived. The parties also, as the record shows, purported to waive their appeal *343 rights, an action which was unnecessary had it been clear that the provisions of CPL 310.10 (3) were waivable. The parties, although requested to do so at argument, have submit-, ted no authority on the question whether a waiver of section 310.10 (2) was appropriate, or whether waiver of appeal rights over such a waiver was permissible or effective, and research by this court has yielded no authority on this issue, and, accordingly, the issue to be determined by this court in this decision as to the impact of CPL 310.10 (2) is a matter of first impression.
All but two of the cases cited above by the defendants for the proposition that the court should have continued the trial under the circumstances are distinguishable from the situation presented here. Where delay is caused by juror unavailability during trial up to the time of commencement of deliberations, there is no statutory mandate for any continuous proceeding. Thus, the balancing test discussed in case law must be applied in such circumstances. The two cases cited which applied the same concept to deliberating juries, Ramchair (supra), and Niccolich (supra), were decided with respect to jury deliberations which took place prior to the time chapter 83 became law, and therefore no longer apply as the Legislature has now expressly spoken on the issue.
Even if the parties could waive the applicability of CPL 310.10 (2) and any appellate claims that CPL 310.10 (2) was not waivable, this court finds that the concurrence of the court would be necessary for any such waiver. Any other rule would subvert the court’s obligation to see that the trial was fairly and properly conducted, under law.
The Legislature, when it changed the New York deliberation paradigm from one of sequestration to one of continued deliberation, was clearly concerned with the potential impact of outside influences on a jury’s ability to render verdicts fairly. To minimize the possibility of external influences, the Legislature was explicit in its mandate of no more than a 24-hour separation, except for weekends and holidays. Although it was common knowledge that Muslim defendants regularly asserted their rights to be excused from court on Fridays and that religious observances of other groups for particular holidays which are not public holidays, are routinely respected by the courts, CPL 310.10 (2) does not authorize exceptions for such reason or authorize a court to permit such exceptions to the continuous deliberation requirement. *344 In other recent amendments to the CPL, the Legislature has made exceptions to strict time limits where one or both parties consent. (See, for example, CPL 30.30, 180.80.) Thus, under the statutory construction principle that differences in the way different sections of the same law are written must be presumed to be meaningful, it may be presumed that the Legislature did not intend that CPL 310.10 (2) or its mandate could be circumvented by the parties.
The continuous deliberation rule is, however, even by itself not absolute. By recognizing separation for weekends and holidays, the rule permits separations for up to three days in certain circumstances, indicating that a jury separation for no more than such period (i.e., three days), would not compromise the legislative principle embodied in CPL 310.10 (2), notwithstanding that section does not appear to authorize any such gaps.[3] By agreeing and consenting to the one-day delay agreed to by the parties, and having no precedent to find such result improper, this court so found.
However, if the court were to have permitted the jurors to return after the three-day weekend to continue their deliberations on Tuesday, February 13th, the gap would have been six days, and could have been more if such juror did not return on such day, and the case was further adjourned. Consenting to a six-day delay is another matter. Such delay can neither be construed to be authorized under the express words of the statute, or even under its spirit[4] which precludes delays of more than three days in all events.
Here, the parties offered to consent to such delay, and the court would not, citing CPL 310.10 (2). To the extent the court is responsible for the oversight of the deliberation process, which is not only for the benefit or burden of the parties, but also to assure the integrity of jury verdicts, free from outside influences as expressed in New York statutory law, and to see that such law is properly carried out, the court must retain a power to consent to any waiver.
For all these reasons, the court, following the mandate of section 310.10 (2) and exercising its discretion not to accede to fur *345 ther stipulations of counsel, properly determined to declare a mistrial.
Defendants’ motions are denied.

. There were no alternates when the 12 jurors began deliberations.

. Class A felonies, class B violent felonies and certain class C violent felonies were excluded. A subsequent statutory change in 2001 extended the provision to all felonies. (L 2001, ch 47, § 2.)

. Cf People v Gajadhar, 38 AD3d 127 (1st Dept 2007) (which applied a similar analysis where a waiver of a jury of 12 by the parties, consented to by the court, was held permissible, notwithstanding a lack of direct statutory permission because the defendant could have waived the entire jury).

. See McKinney’s Consolidated Laws of NY, Book 1, Statutes § 96.