[909 NYS2d 872]

In the Matter of CATHERINE A. GORMAN, Petitioner, v KATHLEEN M. RICE et al., Respondents.

Supreme Court, Nassau County, August 16, 2010

## APPEARANCES OF COUNSEL

*Harry Kutner* for petitioner. *Kathleen M. Rice, District Attorney* (*Christian Kubic* of counsel), respondent pro se.

## OPINION OF THE COURT

F. DANA WINSLOW, J.

Upon all the papers submitted and oral argument on June 18, 2010, the petition by Catherine A. Gorman for a judgment, pursuant to article 78 of the Civil Practice Law and Rules, dismissing the pending case under docket No. 2006NA016493 and directing the respondents to be prohibited from further prosecuting petitioner (defendant), is determined as follows.

### Facts

The claims in this petition arise out of a criminal trial in the District Court of Nassau County after the defendant was arrested for multiple charges in violation of the Vehicle and Traffic Law. The initial trial began in June 2008 and a mistrial was declared on defendant's motion for prejudicial conduct of the prosecutor. During the second trial, the District Court declared a mistrial sua sponte. The record reveals that the declaration was made in response to defense counsel's statement that he would file a complaint against the Judge, Honorable Robert H. Spergel, for alleged "pro-prosecutorial" rulings.

After the announcement of a mistrial and a short recess thereafter, Judge Spergel reconvened with both counsel and the parties and asked defense counsel whether he consented to the mistrial. In response to defense counsel's answer denying any consent, Judge Spergel asked again whether the defendant wanted him to proceed with the trial. The defendant reluctantly consented to the mistrial which was declared again and Judge Spergel recused himself immediately thereafter. The case was

assigned to a successor, Judge David Goodsell. At the commencement of the subsequent trial, defendant moved, inter alia, for dismissal on grounds of double jeopardy. Even though Judge Goodsell acknowledged that he was unsure whether or not he had the authority to hear the case and decide the motion, Judge Goodsell found that defense counsel's threat of filing a formal complaint against Judge Spergel could be seen, in the first instance, as a request for a mistrial to which the defendant consented after the declaration of a mistrial. He also decided the defendant was technically correct in asserting that consent could not be given to a mistrial declared by the court sua sponte. He further stated that the record clearly established *manifest necessity* and *physical impossibility* to proceed with the trial in conformity with the law and that the mistrial was declared in order to protect the rights of the defendant to a fair trial. However, this court notes that Judge Goodsell's gratuitous determination that Judge Spergel was presented with circumstances evidencing *manifest necessity* and *physical impossibility* lacks reference to specific facts or circumstances. After the District Court denied defendant's motion to dismiss, the defendant filed this petition to prohibit the District Court and the People from proceeding any further and requested an order to dismiss the case as being barred by double jeopardy.

## Article 78

■ The threshold issue is whether the District Court's denial of the motion to dismiss can be challenged in an article 78 proceeding. In general, a determination in a civil or criminal matter may not be challenged in an article 78 proceeding. (CPLR 7801 [2].) However, an exception to CPLR 7801 (2) allows a petition to be brought to the Supreme Court for prohibition to restrain a judicial officer from acting without or in excess of a court's jurisdiction. (CPLR 7803 [2]; *see Matter of Town of Huntington v New York State Div. of Human Rights*, 82 NY2d 783 [1993].) The term "judicial officer" includes judges and prosecutors. (*Matter of Schumer v Holtzman*, 60 NY2d 46 [1983]; *Matter of Dondi v Jones*, 40 NY2d 8 [1976].) This remedy of prohibition is limited to jurisdictional error and excludes any substantive or procedural issues. (*See Matter of Rush v Mordue*, 68 NY2d 348 [1986]; *Matter of Holtzman v Goldman*, 71 NY2d 564 [1988].) The initial burden of proof is on the petitioner to show a clear legal right to the relief. (*See Matter of Molea v Marasco*, 64 NY2d 718 [1984].) To determine the availability of

prohibition by an article 78 proceeding, the court must weigh three factors: "the gravity of the harm caused by the act sought to be performed by the official; . . . [available] recourse to ordinary proceedings at law or in equity; and whether prohibition would furnish 'a more complete and efficacious remedy . . . even though other methods of redress are technically available.' " (*Matter of Rush v Mordue*, 68 NY2d 348, 354 [1986].) Considering those factors, the courts generally recognize prohibition as a remedy applicable to a criminal prosecution in potential violation of double jeopardy. (*See Matter of Kraemer v County Ct. of Suffolk County*, 6 NY2d 363 [1959]; *Matter of Enright v Siedlecki*, 59 NY2d 195 [1983].)

Even though the petitioner may appeal the District Court's judgment for appellate review after completion of the trial, this court recognizes that prohibition under CPLR 7803 (2) is a proper and available remedy at this stage of the proceeding. In that context, the court also recognizes the gravity of any further criminal prosecution and potential prejudice to the petitioner during and after the trial. The court further determines that a proceeding pursuant to CPLR 7803 (2) is more complete and efficacious remedy than the one by appellate review after completion of a trial with an adverse determination against the petitioner.

## Double Jeopardy

The court next considers the issue of double jeopardy. Under the Fifth Amendment of the US Constitution, NY Constitution article I and CPL 40.20, the Double Jeopardy Clause protects the defendant in a criminal proceeding from being put in jeopardy twice for the same offense. Procedurally, jeopardy attaches when the jury has been impaneled and sworn, or in the case of a trial by the court, when a witness is sworn. (CPL 40.30; *Matter of Colcloughley v Johnson*, 115 AD2d 58 [1986].) Once a mistrial is declared without defendant's consent, retrial is barred by double jeopardy pursuant to the US Constitution, unless one of the enumerated conditions is present. (*See United States v Perez*, 9 Wheat [22 US] 579 [1824]; *People v Michael*, 48 NY2d 1 [1979].)

## Manifest Necessity

Jeopardy attaches to the declaration of a mistrial unless there is *manifest necessity* for the mistrial. (*United States v Perez*, 9 Wheat [22 US] 579 [1824]; *People v Michael*, 48 NY2d 1 [1979].)

To establish *manifest necessity*, the court must have considered all proper alternatives on the record before declaring a mistrial. (*See People v McElveen*, 234 AD2d 228 [1996]; *Matter of Colcloughley v Johnson*, 115 AD2d 58 [1986]; *Matter of Zeigler v Morgenthau*, 99 AD2d 989 [1984]; *Matter of Dickson v Morgenthau*, 102 AD2d 168 [1984]; *Matter of Respeto v McNab*, 90 AD2d 308 [1982].) The foregoing constitutes the minimum requirement established under the US Constitution.

In this case, the initial burden of proof for the petitioner is to show that the declaration of a mistrial was by the court sua sponte and without petitioner's consent. Once this initial requirement is satisfied, the burden shifts to the respondent prosecutor to overcome the defense of double jeopardy by showing that the judge articulated a *manifest necessity* requiring him to declare a mistrial. (*See Matter of Colcloughley v Johnson*, 115 AD2d 58 [1986]; *People v Ramchair*, 308 AD2d 601, 602 [2003], *affd* 8 NY3d 313 [2007].) This court finds that petitioner has met her burden by providing the District Court's trial record, showing that a declaration of a mistrial by the court sua sponte occurred without the requisite consent of the petitioner.

The relevant statements in the record between the court and defense counsel are as follows.

> "[DEFENSE COUNSEL] MR. KUTNER: . . . you are depriving the defense of critical documents, and I think it's highly improper, at this point verging on the point of a complaint being needed.
>
> "COURT: Let's stop. Is it your intent to file a complaint against me? Yes or no? If the answer is yes, then I'll recuse myself and I'll declare a mistrial. Is that what you want? Yes or no? Tread carefully.
>
> "MR. KUTNER: Judge, one moment. Let me discuss this with my client.
>
> "COURT: . . . Both counsel, I'm declaring a mistrial based on the threats of counsel to file a complaint against me.
>
> "MR. KUTNER: Judge, I didn't say . . .
>
> "COURT: . . . There is a mistrial. I'll be back in five minutes.
>
> (brief recess)
>
> "COURT: Before we broke, I declared a mistrial . . . And I'm assuming, counsel, that you agree that I cannot—should not—based on your comments that

I should not be able to preside over this trial?

"MR. KUTNER: Yes, sir.

"COURT: Then on consent, I'm going to declare a mistrial.

"MR. KUTNER: Judge, I'm not consenting to a mistrial. . . .

"COURT: I'm going to take five minutes, and you can discuss with your client what you want to do. If you and your client decide you want me to preside over this trial, then I'll reconsider it.

"MR. KUTNER: . . . Thank you for the opportunity.

(brief recess)

"MR. KUTNER: . . . , after consulting with Mrs. Gorman . . . , regrettably we're going to go with the mistrial.

"COURT: Very good. A mistrial is declared at the request of the defendant . . .

"COURT: . . . I'm going to have this case put back on for tomorrow in my part for purposes of control to see if there's another judge available to start the trial. Is there any objection . . . ?

"MR. KUTNER: No, sir."

The prosecutor's initial response to the petitioner's position is that Judge Spergel properly declared a mistrial because the defense counsel threatened to file a complaint against him. Facing a perceived threat of a complaint to be filed against him, Judge Spergel might have had reasonable ground for concern about his ability to provide the defendant with a fair trial. However, this concern is not sufficient to satisfy the standard of *manifest necessity* without any further explanation as to the significance of the perceived threat to file a complaint. Judge Spergel never articulated a specific basis to justify his declaration of a mistrial. Furthermore, the record does not reveal an effort on the part of Judge Spergel to consider a proper alternative before declaring a mistrial.

## Physical Impossibility

This court's determination that Judge Spergel did not articulate the grounds for a mistrial with the required specificity to satisfy the standard of *manifest necessity* does not conclude its consideration. The court next considers the more stringent *physical impossibility* standard of New York law. Under New York law, when a mistrial is declared by the court sua sponte, double

jeopardy protection will be denied only if the mistrial was based upon the *physical impossibility* to continue with the trial. (*See* CPL 280.10 [3].) The typical example of *physical impossibility* is unavailability of the judge or other essential court personnel caused by death or serious illness during the trial. (*See People v Reed*, 2 AD3d 463 [2003]; *People ex rel. Epting v De Voe*, 284 App Div 1092 [1954], *affd* 309 NY 818 [1955].) In his oral argument, the prosecutor addressed this New York standard of *physical impossibility* combined with the U.S. Supreme Court standard of *manifest necessity* without clear distinction. The prosecutor's argument is that it was physically impossible for the court to provide a fair trial because of the potential bias that Judge Spergel might have had toward defense counsel after the perceived threat of filing a complaint was made. This argument fails because the only basis for the *physical impossibility* is the same as for the *manifest necessity*, namely, the perceived threat of filing a complaint against Judge Spergel. This was insufficient to satisfy even the more flexible standard of *manifest necessity*. Reviewing all the arguments and trial transcripts, this court determines that the record is devoid of any articulated basis sufficient to preclude the double jeopardy protection after the declaration of a mistrial, utilizing either the generic U.S. Supreme Court standard of *manifest necessity* or the more stringent New York standard of *physical impossibility*.

### Discharge of Jury

Respondent District Attorney further argues that the declaration of mistrial was not complete because the jury was not discharged at that moment. One of the underlying principles establishing the right to double jeopardy protection is that the defendant in a criminal trial has a valued right to have his trial completed by a particular tribunal. (*See Wade v Hunter*, 336 US 684 [1949]; *Matter of Colcloughley v Johnson*, 115 AD2d 58 [1986]; *Matter of Cardin v Sedita*, 53 AD2d 253 [1976].) When the defendant moves for a mistrial, defendant in fact waives this right and the discharge of the jury followed by granting defendant's motion completes the trial by a two-step process. (*People v Catten*, 69 NY2d 547 [1987].) However, CPL 280.10 does not require the discharge of the jury to "perfect" the grant of a motion for a mistrial. (*Id.*) In any event, this two-step process is not applicable in this case because the court declared a mistrial, sua sponte, thus without a motion by the defendant. The fact that the jury was not discharged at the moment of declaration of the mistrial is irrelevant in this case.

## Consent

Double jeopardy is a vital check on the State's power to intimidate its citizenry. (*People v Michael*, 48 NY2d 1 [1979].) In other words, the defendant in a criminal trial has the right to be tried by the jury of her choice to reach the final determination and, perhaps, end the dispute with an acquittal. (*See United States v Jorn*, 400 US 470 [1971].) In this case, the defendant did not waive her right against double jeopardy by allegedly consenting to the mistrial for two reasons.

First, there was no actual consent. When the Spergel court asked the defendant to choose either to consent to a mistrial or to continue the trial after declaration of a mistrial, the defendant was compelled to waive her right, if at all, to her detriment. Consistent with the prosecutor's view that Judge Spergel believed that he might be unable to proceed with a fair trial, the following quotations from defense counsel become most telling, "Judge, I'm not consenting to a mistrial" and "regrettably, we're going to go with the mistrial." When the prosecutor's analysis of the Judge's feeling is combined with the actual record of the trial, this court determines that the following emerges. The defendant had serious concern, if not fear, about her ability to obtain a fair trial. In that context, acquiescence, not consent, was given by defense counsel in response to the Judge's question of whether the defendant would consent to a mistrial. In a criminal trial, perceptions frequently become more important than reality. Considering all the facts and circumstances on the record, this court determines that the perception of the defendant was that a fair trial was not possible. That position is bolstered by the prosecutor's argument regarding the potential bias of Judge Spergel against defense counsel. Thus, this court decides that the defendant's alleged consent to mistrial was illusory, not real. The defendant could not and did not give consent.

Second, the consent to the court's declaration of a mistrial was meaningless because petitioner's consent was obtained after the court had already announced a mistrial. The court's power to declare a mistrial, sua sponte, must be exercised with the greatest caution, under urgent circumstances, and for very plain and obvious causes. (*Matter of Cardin v Sedita*, 53 AD2d 253 [1976]; *Matter of Nolan v Court of Gen. Sessions of County of N.Y.*, 11 NY2d 114 [1962].) One serious impact of declaring a mistrial is that it terminates the prosecution's proceeding and releases the defendant without further prosecutorial exposure.

Even though public safety may be ill served when a criminal matter is dismissed without adjudication of a defendant's guilt, adherence to fundamental constitutional principles and the statutes of New York leaves no alternative but to bar the retrial when a mistrial is improvidently declared. (*Matter of Colclough-ley v Johnson*, 115 AD2d 58 [1986].)

Judge Spergel declared a mistrial in open court, and thereafter recessed the case. When the Judge returned, he stated that the trial would continue unless the defendant would consent to a mistrial. This court determines that the issue of whether or not defense counsel consented after a declaration of a mistrial is not germane. The declaration of a mistrial becomes the defining moment and what happens thereafter is irrelevant. There can be no retrospective justification for declaring a mistrial.

This court notes that there must be and is a bright-line rule of determination which assures continuity and clarity of resolution. In this case, the bright-line rule is that the trial ends immediately upon a judge's declaration of a mistrial in open court and on the record. This is the law in New York whether or not previously declared. The court has no power to continue the trial by withdrawing its declaration or asking for the defendant's consent after the declaration of a mistrial. Once the declaration of a mistrial occurs, the defendant may be retried upon the same charges only upon a showing of *physical impossibility* pursuant to CPL 280.10 (3) and, if amended, satisfying no less a standard than *manifest necessity* pursuant to *United States v Perez* (*supra*). Here, the prosecutor failed to meet such standards.

It is therefore ordered, that the petition is granted to the extent that the pending trial against the petitioner (docket No. 2006NA016493) is dismissed; and it is further ordered, that any prosecution of the petitioner on the charges enumerated in docket No. 2006NA016493 is barred as constituting a violation of the double jeopardy protection.